Jena **BALISTRERI**, Plaintiff,

v.

**PACIFICA POLICE DEPARTMENT,**
Chief **Al Olsen**, individually and as a police agent, Defendants.

No. C–86–1634 SC.

United States District Court,
N.D. California.

March 16, 1987.

---

Brendon Conroy, The Collins Law Office, San Mateo, Cal., for plaintiff.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, San Francisco, Cal., Susan M. Schectman, City Atty., City of Pacifica, Pacifica, Cal., for defendants.

## ORDER RE DEFENDANTS' MOTION TO DISMISS OR STRIKE

CONTI, District Judge.

Plaintiff brings this action against defendants pursuant to 42 U.S.C. § 1983. Under § 1983, plaintiff may sue for the deprivation of rights guaranteed by the United States Constitution. Plaintiff claims defendants failed to protect her from dangers of which defendants had prior notice. Plaintiff further alleges that defendants failed to properly supervise, train and/or discipline Pacifica police officers which resulted in a deprivation of plaintiff's civil rights. This matter is presently before the court on defendants' motion to dismiss plaintiff's complaint. In the alternative, defendants move to strike certain allegations from plaintiff's complaint.

In *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 (9th Cir.1984), the Ninth Circuit reviewed the standard for a motion to dismiss.

> ... a complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80] (1957).
>
> A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. 2A J. Moore, *Moore's Federal Practice* ¶ 12.08 at 2271 (2d Ed. 1982).

*Id.*, at 533–34. On a motion to dismiss, the court assumes as true the facts alleged by plaintiff. *See, Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.1982).

On February 13, 1982, plaintiff's husband (now former husband) severely beat plaintiff. Unidentified Pacifica police officers responded to plaintiff's call for assistance. The police officers removed the husband from the marital home. Plaintiff states that the officers were "rude, insulting and unsympathetic" toward plaintiff's situation. The police officers refused to arrest the husband. Instead, they insisted that plaintiff file her own complaint. The police officers did not offer plaintiff any medical care for her injuries. Sometime after the incident, an unidentified Pacifica police officer pressured plaintiff into agreeing not to file charges against her husband.

Throughout the remainder of 1982, plaintiff was "harrassed by hundreds of phone calls and incidents of vandalism to her home." Plaintiff suspected her husband. Plaintiff reported the phone calls and vandalism numerous times to the Pacifica Po-

lice Department naming her husband as the perpetrator.

In November, 1982, plaintiff obtained a restraining order enjoining her former husband from "harrassing, annoying or having any contact with her." Later, plaintiff reported to Pacifica police officers that her husband had crashed his car into her garage. Responding to plaintiff's complaint, Pacifica police officers did not arrest the husband nor did they investigate plaintiff's allegations. Throughout the remainder of 1982, plaintiff reported additional acts of phone harassment and vandalism by her former husband. The Pacifica Police Department received her complaints with "ridicule," denied that a restraining order was on file protecting plaintiff from her husband, and refused to investigate plaintiff's accusations.

On or about March 27, 1983, a firebomb was thrown through plaintiff's window igniting plaintiff's residence. The resulting fire caused plaintiff property damage and mental anguish. Plaintiff reported the incident to the Pacifica Police Department. Detectives arrived at plaintiff's residence within an hour. According to the police report, police officers interviewed plaintiff's husband and determined he was not involved in the firebombing. Plaintiff told police officers that she believed their investigation was insufficient. Police officers advised plaintiff she could either find another place to live or obtain the services of a private investigator.

Throughout 1983, 1984, and 1985, plaintiff was continually subjected to phone harassment and vandalism. Plaintiff contacted the Pacific Bell Telephone Company ("Pacific Bell") requesting that Pacific Bell "trace" the calls. Although Pacific Bell agreed, the Pacifica Police Department refused to work with Pacific Bell. Plaintiff discovered that Pacific Bell traced some calls to her former husband's family. When plaintiff offferred this information to the Pacifica Police Department, the department refused to utilize it.

Plaintiff alleges that these acts violated her constitutional rights. Specifically, plaintiff asserts that the Pacifica Police

Department and Pacifica Police Chief Al Olsen deprived plaintiff of due process of law and equal protection of the law. In addition, plaintiff alleges that defendants violated her right to be free of unreasonable and unlawful force by police agents and unlawful searches and seizures by police agents. Plaintiff also alleges that defendants' failure to properly supervise, train and/or discipline Pacifica police officers resulted in the harm plaintiff complains of.

In *Ketchum v. County of Alameda*, 811 F.2d 1243 (9th Cir.1987), the Ninth Circuit reviewed whether individuals have a constitutional right to be protected by police officers from the criminal acts of third parties. The Ninth Circuit found that

> [t]he prevailing rule in the circuits is that citizens have no constitutional right to be protected by the state from attack by private third parties, *absent some special relationship* between the state and the victim or the criminal and the victim *that distinguishes the victim from the general public*..... In defining this "special relationship," courts have considered whether there is a custodial relationship created or assumed by the state, *whether the state is aware of a specific risk of harm to the plaintiff, see, e.g.,* Fox [*v. Custis* ], 712 F.2d [84], at 88 [4th Cir.1983], or whether the state has affirmatively placed the plaintiff in a position of danger, *see, e.g., Estate of Gilmore* [*v. Buckley* ], 787 F.2d [714] at 722 [1st Cir.1986].

*Id.,* at 1247 (emphasis added).

The court finds that no special relationship distinguishing plaintiff from the general public exists in the present case. Plaintiff does not allege that the state has created or assumed a custodial relationship over her. Plaintiff also has not plead that defendants' actions "affirmatively place[d] her in a position of danger that she would not otherwise have been in." *See, e.g., Estate of Gilmore v. Buckley,* 787 F.2d 714, 722 (1st Cir.1986). Defendants did not "ratify, condone or in anyway instigate" the actions taken by the former husband against plaintiff. *Id.*

Lastly, although plaintiff informed defendants of the dangerous propensities of her former husband, this fact alone does not create a "special relationship" between plaintiff and the state. Citing to *Fox v. Custis*, 712 F.2d 84 (4th Cir.1983), the Ninth Circuit reported that some courts consider the state's awareness of a "specific risk of harm to the plaintiff" when defining a "special relationship". *Ketchum, supra* at 1246–47. In *Fox*, the Fourth Circuit inferred that such awareness might be relevant in defining a special relationship between the plaintiff and the state. *Fox*, 712 F.2d at 88. However, the Fourth Circuit has found the state's awareness of a specific risk of harm to the plaintiff relevant only in the context where the state had custody over the plaintiff. *Id.; See, e.g., Withers v. Levine*, 615 F.2d 158 (4th Cir.1980), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980) (prison inmates under known risk of harm from homosexual assaults by other inmates); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979) (inmate under observed attack by another inmate); *Woodhous v. Virginia*, 487 F.2d 889 (4th Cir.1973) (same as *Withers*). Thus, the state's awareness of a specific risk of harm to the plaintiff has relevance only when the state has control or custody over the plaintiff.[1]

Here, plaintiff has not alleged that the state had custody or control over her. Defendants' awareness of the husband's dangerous propensities alone does not create a special relationship between plaintiff and the state. Thus, since no special relationship exists between the state and plaintiff, plaintiff has no constitutional right to police protection from the criminal activities of third parties. *See, Ketchum, supra* at 1246–47.

Plaintiff claims that defendants deprived her of equal protection of the law. The court finds no merit to plaintiff's claim. Plaintiff has not alleged defendants discriminated against her as a class in either providing or withholding police protection.

Plaintiff claims that defendants deprived her of her right to be free from excessive, unreasonable and unlawful force from police agents. In addition, plaintiff claims defendants violated her right to be free from unlawful searches and seizures by police agents. The court finds that plaintiff's claims have no merit. Plaintiff has not alleged any facts which indicate defendants or their agents used excessive force or violated plaintiff's Fourth Amendment rights.

Since plaintiff has failed to allege a violation of her constitutional rights, plaintiff has failed to state a claim under § 1983. Therefore, the court dismisses plaintiff's complaint with prejudice.

Because the court grants defendants' motion to dismiss, the court finds moot defendants' motion to strike certain allegations from plaintiff's complaint.

In accordance with the foregoing, it is hereby ordered that:

(1) defendants' motion to dismiss plaintiff's complaint with prejudice is granted.

---

**1.** In *Jensen v. Conrad*, 747 F.2d 185 (4th Cir. 1984), the Fourth Circuit commented that the state's awareness of a plaintiff's plight "goes more to the breach of the 'special relationship' than a definition of the relationship." *Id.*, at 195 n. 11.