Edward DUDOSH, Administrator of the Estate of Kathleen Dudosh

v.

Daniel WARG; Dean Schwartz; and the City of Allentown

Civ. A. No. 85–4066.

United States District Court, E.D. Pennsylvania.

Aug. 6, 1987.

Richard Makoul, Richard Orlosky, Allentown, Pa., for plaintiff.

Robert G. Hanna, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

On May 18, 1987, we granted in part and denied in part the defendants' motion for summary judgment, 665 F.Supp. 381. Both the plaintiff and the defendants have moved for reconsideration of that Order, the plaintiff asserting that we erred in granting the defendants partial summary judgment and the defendants contending that we erred in failing to grant their motion in its entirety. The plaintiff has also requested, if we deny its Motion For Reconsideration, that we certify for appeal pursuant to 28 U.S.C.A. § 1292(b) (West Supp. 1987) that portion of our Order granting the defendants partial summary judgment. In response, the defendants request, if we deny their Motion For Reconsideration, that we also certify for appeal, if we grant the plaintiff's Motion For Certification, that portion of our Order denying them summary judgment. Our Memorandum and Order of May 18 speak for themselves, and we see no need for a lengthy review of the basis for and effect of our decision. Stated succinctly as possible, we granted both the individual defendants and the municipal defendant summary judgment as to the plaintiff's Fourteenth Amendment due process claim on the ground, *inter alia*, that the defendants possessed no *constitutional* duty to provide the decedent with police protection, adequate or otherwise, and therefore, their failure to provide her with such protection could in no way have constituted a violation of her substantive due process rights under the Fourteenth Amendment. We denied the defendants summary judgment on the plaintiff's Fourteenth Amendment equal protection claim on the ground that we could not say that a reasonable jury could not conclude on the basis of the evidence of record that the individual defendants unlawfully discriminated against the decedent, either on the basis of her sex or the nature of the complaint she filed, in the manner in which they handled her request for assistance.[1]

We also granted in part and denied in part the municipal defendant's motion for summary judgment as to the claims asserted against it in the context of the plaintiff's equal protection claim.[2] Here, the plaintiff asserted two theories of liability against the City: a "custom" theory and a "failure to train" theory. We denied the City summary judgment as to the "custom" theory on the ground that there was enough evidence of record upon which a jury could find that the City had, through its silence

---

1. The distinction between the basis for the alleged discrimination, *i.e.,* whether the defendants discriminated against the decedent because of her sex or because of the type of complaint she filed, is critical. The importance of the distinction shall be discussed further *infra.*

2. Since we suspect that counsel for both parties failed to completely understand the import of our decision, we stress that we examined the liability of the municipal defendant *only* in the context of the plaintiff's equal protection claim.

There was and is no need to consider the scope of the City's liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny in the context of the plaintiff's due process claim since we have concluded that the decedent did not possess a right to police protection, adequate or otherwise, under the facts of this case under the Due Process Clause of the Fourteenth Amendment.

and/or acquiescence, adopted a policy or custom of discriminating against women and/or those who filed domestic complaints in the manner in which they handled requests for assistnace from such individuals. We granted the City summary judgment as to the plaintiff's "failure to train" theory on the ground that the plaintiff had failed to adduce sufficient evidence upon which a jury could reasonably conclude that the City had inadequately trained its police officers such that it could be said that its failure to train constituted a reckless disregard for or deliberate indifference to the constitutional right of its citizens to equal protection of the law.

## I. The Plaintiff's Motion For Reconsideration.

### A. Factual Errors.

The plaintiff asserts that we committed a variety of factual errors in our decision. As noted in our earlier opinion, however, we are *not* permitted in the context of resolving a summary judgment motion to engage in the "finding" of facts. We may not draw our own inferences from the record, but rather, must draw all reasonable inferences from the evidence of record in favor of the nonmoving party.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted in favor of the moving party only if "there is no *genuine* issue as to any *material* fact and ... the moving party is entitled to a judgment as a *matter of law.*" (Emphasis added.) In applying this standard, we engage ourselves in a three step analysis. The first step is to examine the record and determine whether there are any *genuine* issues of fact. If so, all reasonable inferences must be drawn in favor of the nonmoving party. The second step is to determine whether the disputed issues of fact are *material, i.e.,* do they have an effect upon our decision as to whether the moving party is entitled to judgment as a matter of law. If such disputed issues of fact are not material, they present no impediment to the entry of summary judgment. The third and final step in our analysis is to take the proper facts of

record, and apply them to the relevant statutory or case law.

Here, the plaintiff first states that we erred in "finding" that the Allentown Police Department did not know of Miller's assault upon the decedent which allegedly required her hospitalization and that the Department did not know that Miller had assaulted the decedent while she was hospitalized. The plaintiff also claims that we erred in our statement of the "undisputed" facts of this case as to certain aspects surrounding the decedent's "hospitalization". The plaintiff is to an extent correct.

In our prior decision, we stated as follows:

On October 19, 1984, the deceased obtained a temporary Protection-From-Abuse (PFA) order from the Court of Common Pleas of Lehigh County of the Commonwealth of Pennsylvania pursuant to 35 Pa.C.S.A. § 10181–10190 (Purdon's Supp.1986). The deceased, in her petition for the temporary PFA order, stated that she and Miller had resided together for approximately two and one-half years, though they were not married. She further alleged in the petition that on October 10, 1984, Miller threatened to kill her and 'anyone who got in his way'; that he had a drinking problem and had been hospitalized many times for alcohol abuse; that in October, 1984, Miller 'pushed' the deceased, 'hit her around', 'smashed her furniture and made several threats to kill' himself and her; that on another occasion in October, 1984, Miller 'beat up' the deceased two days in a row, requiring her hospitalization for 'two weeks', during which Miller assaulted her again; and that in August, 1984, Miller 'choked her so hard that he lifted her off the ground two feet while heavily drunk'. (Citation omitted.) The Allentown Hospital records contained in the record before us, however, reflect that the deceased was admitted to the hospital on July 18, 1984, and was apparently discharged the following day. The records list her 'admitting diagnosis' as 'depressive disorder'. (Citation omit-

ted.) While the records do mention complaints by the decedent that Miller had assaulted her, no where do the hospital records refer to any physical injuries which required that she be hospitalized. More importantly, the plaintiff has presented no evidence that any of the incidents described in the petition were reported to the Allentown police.

*Dudosh v. City of Allentown, et al.,* 665 F.Supp. 381, 384 (E.D.Pa.1987).

At the time we issued our decision, we were not cognizant of the fact that the decedent's petition for the PFA Order, as well as the Order itself, had been served upon the Allentown Police Department. (*See* Plaintiff's Brief in Opposition to Defendant's Motion For Summary Judgment, Doc. # 16, Ex. "D", ¶ E)[3] Thus, we must deem the individual defendants, as well as the municipal defendant, to have been aware of the *allegations* contained in the decedent's petition for the PFA Order.

As to our statements regarding the decedent's hospitalization, we also erred in our statement that the decedent was discharged from the hospital July 19, 1984, only one day after she had been admitted. According to the plaintiff, the hospital records clearly indicate that the decedent was admitted to the hospital on July *19,* 1984, and discharged on July 27, 1984. This is also in error. The "admission form" pertaining to the decedent, as reproduced by plaintiff's counsel, indicates that the decedent was admitted to the hospital on July 18, 1984. (Plaintiff's Motion For

Reconsideration, Doc. # 19, Ex. "B".) It is true that the plaintiff was not discharged from the hospital until July 27, 1984. (*Id.* at "Discharge Summary".)[4]

We find no error, however, in our statement that "nowhere do the hospital records refer to any *physical injuries* which required that she be hospitalized." *Dudosh v. City of Allentown, et al.,* 665 F.Supp. at 384 (Emphasis added.) According to plaintiff's counsel, "The records indicate that Decedent was admitted to the hospital after being referred there by Crisis Prevention due to the fact that Miller had beaten Decedent over a period of days immediately after his discharge from the state hospital." (Plaintiff's Brief In Support Of Motion For Reconsideration, Doc. # 19, p. 4.) It does not follow from this, however, that the decedent was hospitalized because of physical injuries she received at the hands of Miller.

The hospital "progress record" does indeed describe contusions, abrasions and rashes over various parts of the decedent's body at the time of her admission. The same hospital records, though, indicate that the decedent's "admitting diagnosis" was a "depressive disorder". As stated in our prior opinion, the only inference which may be drawn from the records is that the decedent was admitted to the hospital because of an emotional disturbance, albeit apparently caused by Miller's conduct, and not because of any physical condition. Plaintiff's counsel's continued assertions to the

---

**3.** Despite plaintiff's assertion to the contrary, we discern no provision of Pennsylvania's Protection From Abuse Act which would have required that a copy of the decedent's Petition be served upon the Allentown Police Department. Section 7 of the Act merely provides that, "A copy of any order under this act shall be issued to the plaintiff, the defendant and the police department with appropriate jurisdiction to enforce the order or agreement." 35 Pa. S.A. § 10187 (Purdon's 1977). Nevertheless, pursuant to the specific instructions of the Lehigh County Court of Common Pleas as contained in its Order of October 19, 1984, a copy of the Petition was, in fact, served upon the Allentown Police Department.

**4.** The "Discharge Summary" produced by the plaintiff as an exhibit attached to its Motion For

Reconsideration was not contained in the record before us when we decided the defendants' summary judgment motion. Portions of the hospital records pertaining to the decedent were reproduced by the defendants and attached as an exhibit to their summary judgment motion. (Defendant's Motion For Summary Judgment, Doc. # 15, Ex. "B".) Our prior conclusion that the decedent was discharged from the hospital on July 19, 1984, was based on the notation "0019–2" handwritten into the space designated "Discharge Date" on the Admission Form and the fact that the last notation on the decedent's "Progress Record", as reproduced by the defendants, was dated 7/19/84. The plaintiff in his response to the defendants' summary judgment motion did not seek to supplement the hospital records produced by the defendants.

contrary are disingenuous and incredulous.[5]

The plaintiff next asserts that we erred in our statement that neither of the individual defendants heard any of the conversation which occurred between the decedent and Arlene Bell. *See Dudosh v. City of Allentown, et al.*, at 386. The content of the conversation between Bell and the decedent is summarized in our prior opinion and need not be repeated. *See, id.*[6] As to the plaintiff's assertion that he produced sufficient evidence to contradict the individual defendants' testimony that they did not hear Bell's warnings to the plaintiff, he cites the following deposition testimony of Bell:

Q: Mrs. Bell, when you warned Kathleen that Tex was upstairs, I think your testimony was that the police were present when you gave her that warning.

A: They were behind her, yes.

Q: Were they within earshot of what you told her?

A: Yes; as close as I am to you.

Q: So they would have heard what you told her?

A: Oh, yes.

Q: And when you told Kathleen 'You will be killed if you go upstairs,' the police heard that?

A: Yes.

Q: And did the police ask you any questions?

A: No.

Q: Did they ask you why you thought that she would be killed?

A: No.

Q: Did the police make any statements whatsoever that you heard—

A: No.

Q: —while you were discussing this with Kathleen?

A: No. She said, 'I can handle him. I can handle him.'

I said, 'Kathleen, you can't. You can't.'

Q: And this was heard by the police?

A: Yes.

(Doc. #16, Appendix VIII, deposition of Arlene Bell, pp. 40–41.)

Based on this testimony, we believe a reasonable juror could infer that the individual defendants had, in fact, heard the conversation between Bell and the decedent. To hold otherwise would require that we balance the credibility of the officer's testimony against Bell's testimony as to their close proximity to the location where the conversation occurred. As stated earlier, we may not assess the credibility of testimony or balance the weight of the evidence in deciding a summary judgment motion. Such tasks are for the trier of fact. Thus, we must assume that the individual defendants did indeed hear the exchange.

In sum, in deciding whether the defendants are entitled to a judgment as a matter of law, we take as true: (1) that the Allentown Police Department received a copy of the decedent's petition for the PFA Order and (2) that the individual defendants heard the conversation which occurred between the decedent and Arlene Bell. Making these assumptions, we proceed to examine whether this "new" set of facts alters our prior decision that the defendants were en-

---

5. If the information contained in the hospital records is untrue or incomplete, it was plaintiff's obligation to submit additional evidence, *e.g.*, the affidavit of the decedent's treating physician, to supplement the record. He has not, however, submitted any such additional evidence. Further, the questions of when the decedent was admitted to the hospital, the reason therefor and when she was discharged have been rendered irrelevant based on the fact that a copy of the decedent's Petition for the PFA Order was served upon the Allentown Police Department and not a copy of her hospital records.

6. We note that plaintiff's counsel in their "quotation" of Bell's deposition testimony conveniently failed to quote Bell in context. On page 6 of their Brief, Doc. #19, they quote Bell as follows: "[Arlene Bell] said, [to Ms. Dudosh]: 'You are going to be killed ...'" Bell's statement in its entirety reads, "I said, 'You are going to be killed.' *I didn't mean with a gun. I meant physically, because he used to beat her ...*" (Doc. #16, Appendix VIII, deposition of Arlene Bell, p. 11.) (Emphasis added.) Plaintiff's counsel also failed to set forth the decedent's rebuke of Bell's admonition in which the decedent responded to Bell, "No; I can talk to him ... I can handle him." (*Id.* at 12.)

titled to judgment as a matter of law as to the plaintiff's due process claim, as well as the plaintiff's contention that we erred in this conclusion in the first instance.

### B. Errors of Law.

First, the plaintiff asserts that we erred in relying upon the dissent of Judge Adams in *Estate of Bailey By Oare v. County of York "Bailey"*, 768 F.2d 503 (3d Cir.1985), as the basis for our decision that the defendants were entitled to judgment as a matter of law as to the plaintiff's due process claim. This assertion is so patently ridiculous our first reaction was to ignore it. However, for the purpose of educating plaintiff's counsel and putting their minds at ease, we state, *once again*, that we are *fully* aware of our obligation, absent contrary precedent established by the Third Circuit Court of Appeals sitting *en banc* or the United States Supreme Court, to abide by legal precedent set forth by a majority panel of the Third Circuit. We stated such in our prior opinion. *See Dudosh v. City of Allentown, et al.*, 665 F.Supp. at 391 n. 3. Further, we did not base our opinion upon Judge Adams's dissent. As we stated in our prior opinion, we believe that our decision is completely consistent with the panel majority's decision in *Bailey. See, id.*[7]

◼ Second, the plaintiff argues in its Motion For Reconsideration that it presented sufficient evidence, such that, "Under the circumstances, a reasonable juror could conclude that the individual defendants' actions 'shock the conscience' and thus rise to the level of a constitutional violation of Decedent's rights." (Plaintiff's Brief in Support of Motion For Reconsideration,

Doc. # 19, p. 3.) The question of whether the state actors' conduct "shocks the conscience" is not, however, in the context of defining the outer parameters of substantive due process, a question of fact. It is an issue of law for the court to decide. The ultimate arbiter of the parameters of substantive due process is, of course, the United States Supreme Court. As a trial court, we must in the first instance decide whether the defendants' conduct was such that it can be said that their actions deprived the decedent of her right to substantive due process. In making this determination, we are guided by the Supreme Court's metaphor that only government conduct that shocks the *judicial* conscience may be found to violate the Fourteenth Amendment's Due Process Clause. The "fundamental right" underlying the individual's right to substantive due process in cases such as this is the individual's right to be free from "abusive" government conduct. *See, e.g., Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir.1986).

◼ Third, the plaintiff contends that we erred in our conclusion that, "the conduct of the individual defendants was, at most, negligent", and thus, the defendants could not be held liable based on the rule of law enunciated by the Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). *Dudosh v. City of Allentown, et al.*, 665 F.Supp. at 391. Even if we were to agree that the plaintiff had adduced sufficient evidence upon which a jury could conclude that the individual defendants acted in something more

---

7. The plaintiff relies heavily upon *Escamilla v. City of Santa Ana*, 606 F.Supp. 928 (C.D.Cal. 1985), *affirmed*, 796 F.2d 266 (9th Cir.1986), a case not cited in the plaintiff's response to the defendants' motion for summary judgment, but cited by this Court in our earlier opinion, for his proposition that we erred in our conclusion that the defendants did not possess a constitutional duty to provide the decedent with police protection. To correct an apparent misunderstanding on plaintiff's counsels' behalf, neither the decision of the Ninth Circuit Court of Appeals nor that of the district court in *Escamilla* represent binding precedent which this Court must follow. While we may look to such decisions for guid-

ance, we are in no way obligated to follow their rule of law. Further, we find much in both decisions which counsels against the position advanced by the plaintiff. Also, the district court's statement in *Escamilla* that, "(a) constitutional duty arises only when the persons acting under color of state law ... are aware of a special danger with respect to a particular victim", 606 F.Supp. at 931, represents only *dicta*, since the police officers in that case were not aware of any special danger to the decedent, and thus, the district court was not required to decide whether the police officers could be held liable for deprivation of the decedent's right to due process were such, in fact, the case.

than a negligent manner, our decision that the plaintiff had failed to adduce sufficient evidence upon which *this Court* could conclude that the individual defendants had deprived the decedent of a constitutional right within the meaning of the Fourteenth Amendment's Due Process Clause would not be altered. To this extent, therefore, our prior conclusion that the individual defendants acted, at most, negligently, is *dicta,* and it was unnecessary for us to even reach the issue since we had already concluded that the defendants were under no constitutional duty to provide the decedent with police protection, adequate or otherwise. *See, e.g., Jackson v. City of Joliet,* 715 F.2d 1200, 1204 (7th Cir.1983), where the Court stated, "It is enough to note that, as currently understood, the concept of liberty in the Fourteenth Amendment does not include a right to basic services, *whether competently provided or otherwise.*" (Emphasis added.) Absent a constitutional duty, the manner in which the defendants performed their job is of no concern to us.

Fourth, the plaintiff challenges our general conclusion that the decedent possessed no right to police protection, adequate or otherwise, under the Fourteenth Amendment's Due Process Clause. After having reexamined the evidence in the record before us, and drawing all inferences therefrom in the light *most* favorable to the plaintiff, inclusive of the new inferences we must draw as discussed earlier, we see no reason to alter our decision.

Stripped to its barest essence, the plaintiff's primary argument is that we did not properly apply the rules of law established by the Third Circuit in *Bailey.* As stated in our prior opinion, we believe that the facts of this case are distinguishable from the facts of *Bailey,* and that these distinctions dictate a different result in this case. To reiterate, this action involves a competent adult. *Bailey* involved a child. In this case, the decedent, willingly and without force, accompanied the individual defendants to the entrance to her residence. The decedent in *Bailey* was too young to have a say in the matter of where she should be placed or who should have custody of her. Despite plaintiff's counsel's assertion otherwise, the decedent in this case was not in "protective legal custody", whereas the decedent in *Bailey* was taken into custody by the defendant child and youth services agency.[8] Finally, the defendant child services agency in *Bailey* had, in fact, provided the decedent with affirmative protection, by removing her from her mother's home and placing her in foster care, but relinquished that protection.[9] The Protection From Abuse Act, unlike Pennsylvania's child welfare laws, neither authorized the defendants to remove the decedent from the premises nor did it allow them to place her in custody against her will.

The plaintiff's fifth and final challenge to our decision of May 18 is that we erred in

---

8. We find no support in the record for the plaintiff's assertion that the decedent was in the "protective legal custody", as that phrase is utilized in this context, of the individual defendants at the time of her death. As stated above, the decedent willingly accompanied the individual defendants to her apartment. She was not forced, coerced or ordered to do so. The plaintiff has cited us to no authority which would have even justified the defendants placing the decedent in "legal custody". This is not a case where, *e.g.,* an individual has provided state's evidence in return for a guarantee of protection, where the state has incarcerated a person for criminal offenses in a penal institution or where the state has placed a victim of parental child abuse into protective custody pursuant to specific statutory authority.

9. We see no need to distinguish between the penal laws of the Commonwealth of Pennsylva-

nia and the State's Protection From Abuse Act. All of those acts which may be proscribed by an order entered pursuant to the Act are prohibited by Pennsylvania's criminal laws. The Protection From Abuse Act simply provides the victim with an alternative remedy to criminal prosecution. Were we to hold otherwise, every time a Pennsylvania court entered an order pursuant to the Act, the authorities responsible for enforcing the order would become subject to liability under § 1983. We would in effect be "constitutionalizing" orders entered pursuant to the Act. We do not believe that such a result is warranted. We also find nothing in the orders that were entered by the Lehigh County Court with regard to the decedent to indicate that the Court was requiring the Allentown Police Department to provide her with any more protection than they would already be authorized to provide her under the State's criminal code.

granting the City of Allentown summary judgment as to his "failure to train" theory. Since we have affirmed our decision granting the defendants summary judgment as to the plaintiff's due process claim, we need only consider the plaintiff's failure to train theory in the context of his equal protection claim.

Here, the plaintiff initially argues that we erred in requiring him to submit evidence in the form of expert testimony in order to defeat the City's motion for summary judgment. Once again, plaintiff's counsel have misconstrued the import of our decision. We, in fact, imposed no such requirement upon the plaintiff. In our memorandum, we simply stated that, "The plaintiff ... has failed to present *any* evidence whatsoever, expert *or otherwise,* that the individual defendants were, in fact, inadequately trained because they had not received any specific instructions on the handling of domestic complaints." *Dudosh v. City of Allentown, et al.,* 665 F.Supp. at 396. We fail to comprehend how, from this statement, plaintiff's counsel concluded that we were imposing such a requirement upon them.

Finally, the plaintiff has referred us to no new case law or reasoning that convinces us that our prior decision as to his failure to train theory was in error. Thus, we affirm our prior decision.

**II. The Defendants' Motion For Reconsideration.**

**A. The Equal Protection Claim.**

The defendants also request that we reconsider our Order of May 18 to the extent that it denied them summary judgment as to the plaintiff's equal protection claim. The defendants first argue that we have created an impossible standard for them to abide by in holding that they did not violate the decedent's substantive due process rights, but that the plaintiff had stated a "prima facie" case for a denial of equal protection. According to defense counsel's logic, there is no reason why a different standard should be applied to the due process provisions of the Fourteenth Amendment than to the equal protection provisions. Defense counsel fails to recognize that the differences between the Due Process Clause and the Equal Protection Clause are not simply distinctions without a difference.

 The reason that the individual defendants' "tactical decision" to allow the decedent to accompany them to her apartment may constitute a violation of her right to equal protection, but not of her right to due process, is that we are not concerned in the due process context, with regards to this case, with the defendants' motivation for making the decision that they did. Since we have concluded that, under the facts of this case, the decedent possessed no substantive due process right to police protection, it does not matter whether the defendants acted negligently, grossly negligently or recklessly. The level and quality of the services provided by the Allentown Police Department are questions best addressed by the political processes of the City and any state law remedies the plaintiff might possess. However, once the City assumed the responsibility of providing its citizens with some level of protection, whether it be good, bad, acceptable or otherwise, it also assumed the obligation imposed by the Equal Protection Clause of the Fourteenth Amendment of providing the same level of public services to each of its citizens, regardless of their race, creed or sex. *See, e.g., Jackson v. City of Joliet, supra.* If it chooses to provide a lower level of protection to a certain class of individuals, it must, at a minimum, depending on the nature of the classification, articulate a rational basis for the discrimination.[10] If it cannot, then the City has failed

10. As noted in our prior opinion, the plaintiff has proffered two "theories" of unlawful discrimination by the defendants. The one is that the defendants discriminated against the decedent because of her sex, *i.e.,* they would have provided a male with a higher degree of protec-

tion. The other is that the defendants discriminated against the decedent because of the type of complaint she filed, *viz.,* a "domestic" complaint. As to the former, the defendants, to justify the discrimination, if any, must articulate an "important government interest" underlying

to fulfill its obligation under the Fourteenth Amendment's Equal Protection Clause to provide each of its citizens with the same level of protection.

■ The defendants also argue that they cannot be held liable for any deprivation of the decedent's right to equal protection based on the Suprmem Court's decisions in *Davidson v. Cannon, supra,* and *Daniels v. Williams, supra.* Defendants' counsel fails to recognize, however, that, by very definition, there can be no "negligent" violations of an individuals right to equal protection. As noted by Judge Posner in *Jackson v. City of Joliet, supra,* "only *deliberate* discrimination violates equal protection ..." 715 F.2d at 1203. (Emphasis added.) Thus, at trial, the plaintiff must demonstrate that the defendants deliberately and unlawfully discriminated against the decedent. The issues of negligence and recklessness are simply not relevant to the plaintiff's equal protection claim.

### B. Qualified Immunity.

The defendants next urge that we reconsider our decision that they are not entitled to qualified immunity as to the plaintiff's equal protection claim. Regarding the individual defendants, counsel argues that the Equal Protection Clause does not foreclose the tactics they used, and there is no case law to the contrary. This is untrue. The Equal Protection Clause does indeed preclude the tactical decision made by the individual defendants if their motivation for the decision was the decedent's sex or, possibly, the nature of the complaint she filed. As we have stated *ad nauseam,* the defendants were required to provide the same level of protection to each of its citizens, absent acceptable reasons for providing different classes of its citizens with a lower level of protection. Counsel's asser-

tion that there is no case law to support such a conclusion is incredible. There is abundant case law, as cited in our prior opinion, bearing substantial "factual correspondence" to this case. Applying "general, well developed legal principles", the individual defendants should have been well aware that, if they failed to provide the decedent with the same protection they would have provided another individual outside of her class, they would be violating the decedent's rights under the Equal Protection Clause of the Fourteenth Amendment. *Kovats, et al. v. Rutgers University, et al.,* 822 F.2d 1303 (3d Cir.1987); *see also, Anderson v. Creighton, et al.,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ As to the municipal defendant's assertion that it is allowed to assert a "form" of qualified immunity, we reject this argument as well. There is no authority for the proposition that a municipal government such as the City of Allentown may avail itself of this defense. The defense of "qualified immunity" may only be utilized by government "officials" sued in their individual capacities, not by the government itself. Further, even if the City could assert the defense of qualified immunity, it would not be entitled to such immunity in this case for the same reasons that we have concluded that the individual defendants are not entitled to such immunity.

Finally, we fail to see why counsel for the defendants rehashes his arguments regarding the training the City provided its officers. We granted the City summary judgment as to the plaintiff's "failure to train" theory. Thus, the plaintiff may recover against the City only if he convinces a jury that the City had adopted, either expressly or by acquiescence, a policy or custom of unlawfully discriminating

---

such a classification. As to the latter, the defendants must articulate a "rational basis" for the classification. *See Dudosh v. City of Allentown, et al.,* 665 F.Supp. at 392. The defendants, albeit apparently unwittingly, have now articulated a "basis" for distinguishing between domestic cases and other requests for assistance, that basis being that the people involved in domestic cases know each other. (Defend-

ants' Response to Plaintiff's Motion For Reconsideration, Doc. #20, p. 8.) The record before us, however, does not allow us to say whether such a reason is "rational". Thus, this issue remains to be resolved at trial. With this in mind, we emphasize that the burden of articulating a reason for such a classification which the Court views as rational is upon the defendants.

against women or those who file domestic complaints.

### III. Certification Pursuant to § 1292(b).

Both parties have requested, as stated earlier, that we, in one or more circumstance, certify our decision for appeal pursuant to 28 U.S.C.A. § 1292(b) (West 1987). We decline to do so at the present time. As noted by defense counsel, the individual defendants, under *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), may, if they so choose, immediately appeal our Order denying them summary judgment on the grounds of qualified immunity as to the plaintiff's equal protection claim. If they, in fact, appeal our decision, we will at that time reconsider the question of whether we should certify for appeal any or all of our decision granting in part and denying in part the defendants' motion for summary judgment.

### ORDER

AND NOW, this 6th day of August, 1987, upon consideration of the Motions For Reconsideration filed on behalf of all parties and the responses thereto, IT IS ORDERED that said Motions For Reconsideration are DENIED. IT IS FURTHER ORDERED that the Motions for Certification pursuant to 28 U.S.C.A. § 1292(b) (West Supp.1987) filed on behalf of all parties are DENIED without prejudice.