**Jena BALISTRERI, Plaintiff–Appellant,**

v.

**PACIFICA POLICE DEPARTMENT; Al Olsen, Police Chief, individually and as a police agent, Defendants–Appellees.**

**No. 87–1969.**

United States Court of Appeals, Ninth Circuit.

Submitted March 16, 1988.[*]

Decided Aug. 23, 1988.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Jena Balistreri, Pacifica, Cal., pro se.

Todd A. Roberts, Mark Bonino, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Redwood City, Cal., for defendants-appellees.

Before SCHROEDER and FLETCHER, Circuit Judges, and WATERS,** District Judge.

** Hon. Laughlin E. Waters, Senior U.S. District Judge for the Central District of California, sitting by designation.

FLETCHER, Circuit Judge:

Jena Balistreri appeals, pro se, the district court's dismissal of her 42 U.S.C. § 1983 complaint for failure to state a claim. The district court's decision is published at 656 F.Supp. 423. We reverse.

## FACTS

Balistreri's complaint, prepared by an attorney, alleges the following facts.

On February 13, 1982, Balistreri was severely beaten by her husband. The Pacifica police officers who responded to her call for assistance removed the husband from the home, but refused to place him under arrest, and were "rude, insulting and unsympathetic" toward Mrs. Balistreri. One of the officers stated that Mrs. Balistreri deserved the beating. Although Balistreri was injured seriously enough to require treatment for injuries to her nose, mouth, eyes, teeth and abdomen, the officers did not offer Balistreri medical assistance.

Sometime after the incident, an unidentified Pacifica police officer pressured Balistreri into agreeing not to press charges against her husband.

Throughout 1982, Balistreri continually complained to the Pacifica police of instances of vandalism and of receiving hundreds of harassing phone calls. She named her husband, from whom she was now divorced, as the suspected culprit.

In November 1982, Balistreri obtained a restraining order which enjoined her former husband from "harassing, annoying or having any contact with her." [1] Subsequent to the service of this order, Balistreri's former husband crashed his car into her garage, and Balistreri immediately called the police, who arrived at the scene but stated that they would not arrest the husband or investigate the incident. During the remainder of 1982, Balistreri reported additional acts of phone harassment and vandalism, but the police "received her complaints with ridicule," denied that any restraining order was on file, ignored her requests for protection and investigation, and on one occasion hung up on her when she called to report an instance of vandalism.

On March 27, 1983, a firebomb was thrown through the window of Balistreri's house, causing fire damage and emotional anguish to Balistreri. The police took 45 minutes to respond to Balistreri's "911" call. Although police asked Balistreri's husband a few questions, they determined he was not responsible for the act; Balistreri complained that the investigation was inadequate, to which the police responded that she should either move elsewhere or hire a private investigator.

Throughout 1983–85, Balistreri was continually subjected to telephone harassment and vandalism. Balistreri contacted Pacific Bell to "trace" the calls. Pacific Bell reported that some of these calls could be traced to the former husband's family, but the police refused to act on this information.

Balistreri, represented by counsel, filed a complaint alleging that these acts violated her constitutional rights and caused her to suffer physical injuries, a bleeding ulcer, and emotional distress. The complaint asserted that the defendant police officers had deprived Balistreri of due process and equal protection of the law, and violated her rights to be free of excessive use of force and unreasonable searches and seizures by police. The district court dismissed the complaint with prejudice. After the dismissal, Balistreri ceased to be represented by counsel and was granted leave to proceed in forma pauperis.

## DISCUSSION

### I. *Defective Appellate Brief*

Defendants argue that Balistreri has waived her appeal by failing to follow the formal requirements for brief-writing, as set forth in Fed.R.App.P. 28 and Ninth Circuit Rule 13. This argument is completely meritless.

The Fifth Circuit has squarely addressed and rejected the argument raised by defendants, that a pro se appeal should be

[1] The restraining order was not attached to the complaint, and does not appear in the record.

dismissed for failure to comply with the formal requirements of appellate briefs under Fed.R.App.P. 28. *Abdul–Alim Amin v. Universal Life Ins. Co.*, 706 F.2d 638, 640 n. 1 (5th Cir.1983); *see also McCottrell v. E.E.O.C.*, 726 F.2d 350, 351 (7th Cir.1984) (pro se litigants held to lower standard of brief-writing than attorneys). Of the two cases cited by defendants in which issues were not considered due to appellate procedural defects, neither involved a pro se appellant.

This court recognizes that it has a duty to ensure that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements. *Borzeka v. Heckler*, 739 F.2d 444, 447 n. 2 (9th Cir. 1984) (defective service of complaint by pro se litigant does not warrant dismissal); *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir.1984). Thus, for example, pro se pleadings are liberally construed, particularly where civil rights claims are involved. *Christensen v. C.I.R.*, 786 F.2d 1382, 1384–85 (9th Cir.1986); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc). Defendants suggest no reason to treat pro se appellate briefs any less liberally than pro se pleadings.

Construing Balistreri's brief liberally, it is obvious that she is appealing the district court's dismissal of her § 1983 complaint for failure to state a claim. Indeed, Balistreri's brief identifies and challenges the specific legal ground of the district court's ruling: "I wish to establish that there was a *very special relationship* between plaintiff and the police department ..." Appellant's Opening Brief at 3. The brief also refers to "discrimination" against Balistreri. *Id*, at 1. Defendants' contention that "Balistreri's opening brief fails to set forth any specific error by the district court" must be rejected.[2]

## II. *Whether Balistreri has Stated a § 1983 Claim*

To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right. *Rinker v. Napa County*, 831 F.2d 829, 831 (9th Cir.1987) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). We review de novo the district court's dismissal of Balistreri's complaint under Rule 12(b)(6). *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir.1986). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984). On a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Shah*, 797 F.2d at 745. Balistreri claims that defendants breached a duty to protect her imposed by the due process and equal protection clauses of the Fourteenth Amendment, and further claims a violation by defendants of her right to be free from excessive use of force and unlawful searches and seizures by police.

### A. *Due Process*

Although mere negligence or lack of due care by state officials does not trigger the protections of the due process clause of the Fourteenth Amendment, and therefore does not state a claim under § 1983, *Daniels v. Williams*, 474 U.S. 327, 330–32, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986), conduct which is less than intentional can be cognizable under § 1983. *E.g., Ketchum v. Alameda Co.*, 811 F.2d 1243, 1244, 1246 n. 3 (9th Cir.1987) (gross negligence sufficient). Balistreri has alleged facts which could establish either intentional harassment by defendants, or deliberate or reckless indifference to her safe-

**2.** Defendants complain of Balistreri's failure to serve defendants with various papers, but this is not grounds for dismissal of the appeal. *See Borzeka v. Heckler*, 739 F.2d at 447 n. 2.

ty. These allegations are sufficient to state a § 1983 claim. *See, e.g., Taylor v. Ledbetter,* 818 F.2d 791, 793 (11th Cir.1987) (en banc); *Davidson v. O'Lone,* 752 F.2d 817, 828 (3rd Cir.1984) (en banc), *aff'd on other grounds sub nom. Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed. 2d 677 (1986); *White v. Rochford,* 592 F.2d 381, 385 (7th Cir.1979); *see also Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976) (prison officials' deliberate disregard of prisoner's serious illness or injury violates Eighth Amendment and is cognizable under § 1983).

■ The heart of Balistreri's claim is that the Pacifica police failed to take steps to respond to the continued threats, harassment and violence towards Balistreri by her estranged husband. These allegations, if true, would implicate Balistreri's right to be free from physical harm and restraint comprised by the due process right to liberty. *See Ingraham v. Wright,* 430 U.S. 651, 674–75, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977); *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1447 (9th Cir.1986).[3] While there is, in general, no constitutional duty of state officials to protect members of the public at large from crime, *see Martinez v. California,* 444 U.S. 277, 284–85, 100 S.Ct. 553, 558–59, 62 L.Ed.2d 481 (1980); *Ketchum,* 811 F.2d at 1247; *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982), such a duty may arise by virtue of a "special relationship" between state officials and a particular member of the public. *Ketchum,* 811 F.2d at 1247; *Escamilla v. Santa Ana,* 796 F.2d 266, 269 (9th Cir.1986).

In *Escamilla v. Santa Ana,* this court stated that "state officers' inaction," in-

cluding failing to perform a legally required act or showing deliberate indifference to a prisoner's safety, may be the basis for section 1983 claims. 796 F.2d at 268 (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978)). Although *Estelle* and *Johnson* are both prisoner cases, *Escamilla,* involved the inaction of police officers in failing to protect a bystander. *Escamilla* dismissed the § 1983 claim, not because prisoner cases are *sui generis* and inherently distinguishable from police-and-bystander cases, but rather because in *Escamilla* there was no "custodial or other relationship obligating the police to protect the victim's safety." 796 F.2d at 269. However, *Escamilla* notes that such a relationship could arise between police and persons not in custody.

■ To determine whether a "special relationship" exists, a court may look to a number of factors, which include (1) whether the state created or assumed a custodial relationship toward the plaintiff; (2) whether the state was aware of a specific risk of harm to the plaintiff; (3) whether the state affirmatively placed the plaintiff in a position of danger; or (4) whether the state affirmatively committed itself to the protection of the plaintiff. *See Ketchum,* 811 F.2d at 1247; *Escamilla,* 796 F.2d at 269–70; *Jensen v. Conrad,* 747 F.2d 185, 194 (4th Cir.1984).[4]

Relying on this court's decision in *Ketchum,* the district court found "that no special relationship distinguishing plaintiff from the general public exists in the

---

**3.** Although defendants do not raise this argument, it should be noted that the existence of a state tort remedy is no bar to a § 1983 claim of this sort. *See Smith v. City of Fontana,* 818 F.2d 1411, 1414–15 (9th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987) (explaining *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

**4.** The Courts of Appeals are divided on the issue of whether a "special relationship" giving rise to a constitutional duty of state protection may occur outside a custodial situation. *Compare Ketchum; Escamilla; Jensen,* 747 F.2d at 194 ("custodial or other relationship"); *Estate of*

*Bailey v. County of York,* 768 F.2d 503, 510–11 (3rd Cir.1985), *with DeShaney v. Winnebago Co. Dept. of Soc. Services,* 812 F.2d 298, 303–04 (7th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988); *Harpole v. Arkansas Dept. of Human Services,* 820 F.2d 923, 926–27 (8th Cir.1987); *Estate of Gilmore v. Buckley,* 787 F.2d 714 (1st Cir.1986). The Eleventh Circuit, initially embracing the broader "special relationship" concept, *see Jones v. Phyfer,* 761 F.2d 642, (11th Cir.1985), appears to be retreating from this position. *See Wideman v. Shallowford Community Hosp.,* 826 F.2d 1030, 1034–35 (11th Cir.1987).

present case." *Balistreri*, 656 F.Supp. at 425. The district court correctly noted that Balistreri had alleged neither that the state had created or assumed a custodial relationship over her, nor that the state actors had somehow affirmatively placed her in danger. There were no allegations that the defendants had done anything to "ratify, condone or in any way instigate" the actions of Balistreri's ex-husband. *Id.* (citing *Estate of Gilmore v. Buckley*, 787 F.2d 714, 722 (1st Cir.1986)). The district court is also probably correct in its suggestion that the state's awareness of the victim's plight, by itself, will not create a "special relationship." *See* 656 F.Supp. at 426 & n. 1 (citing *Jensen*, 747 F.2d at 195 n. 11) (state's awareness of plaintiff's plight "goes more to the breach of the 'special relationship' than a definition of the relationship").

■ However, the district court erred in failing to consider whether the state had affirmatively undertaken any duty to protect Balistreri. Although this "special relationship" factor is not listed in *Ketchum*, it is set forth in *Escamilla*, 796 F.2d at 269–70 (citing *Jensen v. Conrad*, 747 F.2d at 194), and nothing in *Ketchum* suggests that the factors enumerated there are meant to be exhaustive. The district court was also mistaken in concluding that the state's awareness of the victim's plight would not support a finding of a special relationship outside of a custodial context. *See* 656 F.Supp. at 426. The Fourth Circuit cases relied on by the district court for this proposition, dating from 1980 and before, predate the expansion of the "special relationship" concept. The more recent Fourth Circuit cases, *Fox v. Custis*, 712 F.2d 84, 88 (4th Cir.1983) and *Jensen*, 747 F.2d at 194, both refer to a "special relationship" in terms of a "custodial *or other* relationship." These cases, as do *Escamilla* and *Ketchum* from our circuit, make clear that "special relationships" can be found out-

side the custodial context. The district court can and should have considered whether the restraining order constituted an affirmative state commitment to protect Balistreri from her husband's harassment, and whether such commitment together with the police awareness of Balistreri's complaints created a special relationship.

In similar circumstances, courts have found that a "special relationship" may exist giving rise to a constitutional duty of police protection. In *Dudosh v. City of Allentown*, 629 F.Supp. 849, 854–55 (E.D. Pa.1985), the court found that plaintiff's complaint sufficiently alleged a special relationship to survive Rule 12(b)(6) dismissal where a wife had obtained a protection-from-abuse order and subsequently contacted police numerous times regarding general harassment, abuse and specific threats against her by her husband, who finally shot and killed her. The order, combined with her subsequent contacts, established a "special relationship" imposing a duty of protection upon the police.[5] *See also Thurman v. City of Torrington*, 595 F.Supp. 1521, 1527 (D.Conn.1984) (finding equal protection duty of state officials to take reasonable preventive measures against domestic abuse of woman, where state had notice of possibility of attacks against her); *Bartalone v. County of Berrien*, 643 F.Supp. 574, 577 (W.D.Mich.1986) (same); *but see Turner v. City of North Charleston*, 675 F.Supp. 314, 318–19 (D.S. C.1987) (state Protection from Domestic Violence Act did not indicate state's affirmative duty to intervene on behalf of domestic violence victims).

We conclude that the restraining order together with the defendants' repeated notice of Balistreri's plight, as alleged in the complaint, are sufficient to state a claim that the defendants owed Balistreri a duty to take reasonable measures to protect Balistreri from her estranged husband. The relationship between the defendants' fail-

---

**5.** Subsequently, the *Dudosh* court found an absence of a special relationship on summary judgment, 665 F.Supp. 381, 390–91 (E.D.Pa. 1987), and on motion to reconsider, the court suggested that a due process violation could not occur on the facts before it absent a custodial relationship. *Dudosh v. Warg*, 668 F.Supp. 944, 950 (E.D.Pa.1987). However, the plaintiffs' equal protection claims survived summary judgment. 665 F.Supp. at 392–94; 668 F.Supp. at 951.

ure to arrest or investigate, and Balistreri's emotional distress, presents a causation question separate from the special relationship and duty of protection issues.

## B. *Equal Protection*

 Several district courts have held that police failure to respond to complaints lodged by women in domestic violence cases may violate equal protection. In *Thurman v. City of Torrington*, 595 F.Supp. 1521 (D.Conn.1984), a wife and her son alleged that the defendant police failed to provide the same protection to abused spouses and children as was afforded the victims of similar abuse outside a domestic relationship. The court held that:

> City officials and police officers are under an affirmative duty to preserve law and order, and to protect the personal safety of persons in the community.... This duty applies equally to women whose personal safety is threatened by individuals with whom they have or have had a domestic relationship as well as to all other persons whose personal safety is threatened, including women not involved in domestic relationships. If officials have notice of the possibility of attacks on women in domestic relationships or other persons, they are under an affirmative duty to take reasonable measures to protect the personal safety of such persons in the community. Failure to perform this duty would constitute a denial of equal protection of the laws. Although the plaintiffs point to no law which on its face discriminates against victims abused by someone with whom they have a domestic relationship, the plaintiffs have alleged that there is an administrative classification used to implement the law in a discriminatory fashion. It is well settled that the equal protection clause is applicable not only to discriminatory legislative action, but also to discriminatory governmental action in administration and enforcement of the law.

595 F.Supp. at 1527 (citations omitted). Because the defendants put forward no important governmental interest for discriminating against women in the provision of police services, *see Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) (discriminatory gender classification can only be justified by important governmental interest), the court held that plaintiffs stated a claim for denial of equal protection. *Thurman*, 595 F.Supp. at 1527–29. *Accord Bartalone v. County of Berrien*, 643 F.Supp. 574, 577 (W.D.Mich. 1986); *Dudosh v. City of Allentown*, 665 F.Supp. 381, 392–94, *reconsideration denied sub nom. Dudosh v. Warg*, 668 F.Supp. 944, 951 (E.D.Pa.1987).

Here, Balistreri's claim is not well-pleaded. Although the complaint states the conclusion that Balistreri was deprived of her right to equal protection of the laws, Complaint at 7–8, there is no specific claim that the defendants' conduct reflected discrimination based on Balistreri's status as a female victim of domestic violence. Instead, the complaint alleges that the defendants' conduct reflected a "failure to protect all members of the public." Complaint at 9.

Notwithstanding this poor draftsmanship, sufficient facts are alleged to suggest animus against Balistreri because she is a woman. For example, the complaint alleges that a responding officer to Balistreri's 1982 assault complaint allegedly stated that he "did not blame plaintiff's husband for hitting her, because of the way she was 'carrying on.'" Complaint at 3. Such remarks strongly suggest an intention to treat domestic abuse cases less seriously than other assaults, as well as an animus against abused women. *Cf. Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir.1987) (derogatory references by police calling plaintiff "nigger" and "coon" demonstrate racial animus to support claim of malicious prosecution violating equal protection).

Because the complaint here is so suggestive of an equal protection claim, we find that the district court abused its discretion in dismissing the claim with prejudice. A dismissal with prejudice in this circumstance does not comport with the policy of Fed.R.Civ.P. 15(a), favoring liberal amendment of pleadings. *See, e.g., DCD Pro-*

*grams, Ltd v. Leighton,* 833 F.2d 183, 185–87 (9th Cir.1987).

### C. *Excessive Force, Search and Seizure*

Balistreri's complaint alleges no facts at all suggesting that defendants subjected her to any search, seizure, or use of force, lawful or otherwise. There is no allegation tending to show that Balistreri's husband was a state agent, or that his acts were ratified, condoned or instigated by the state. Accordingly, dismissal of these claims was proper.

### CONCLUSION

We AFFIRM the district court's dismissal of plaintiff's search, seizure and use of force claims, but REVERSE the dismissal with prejudice of plaintiff's due process and equal protection claims.

LAUGHLIN E. WATERS, District Judge, dissenting:

I conclude that plaintiff fails to allege facts sufficient to establish a "special relationship" between the police and herself, and therefore I respectfully dissent.

I agree with the majority that state officials have a constitutional duty to protect a particular member of the public when a "special relationship" between the authorities and that citizen is created. I also agree that among the factors courts have considered in determining whether such a relationship arises are: (1) whether the plaintiff is in custody; (2) whether the state was aware of a specific risk of harm to the plaintiff; (3) whether the state affirmatively placed the plaintiff in a position of danger; or (4) whether the state affirmatively committed itself to the protection of the plaintiff. *See Ketchum v. County of Alameda,* 811 F.2d 1243, 1247 (9th Cir. 1987); *Escamilla v. Santa Ana,* 796 F.2d 266 (9th Cir.1986); *Jensen v. Conrad,* 747 F.2d 185, 194 (4th Cir.1984). However, I disagree that the facts pleaded in Balistreri's complaint give rise to a constitutional duty of police protection or that she was denied due process of law.

The majority opinion indicates that the existence of the restraining order enjoining Mrs. Balistreri's husband from harassing or having contact with her, when considered in conjunction with police awareness of the dangers to the plaintiff, is sufficient to trigger the duty to protect. The majority, I think, overemphasizes the significance of the restraining order in this case. To be sure, the restraining order heightens the state's awareness to Mrs. Balistreri's risk of harm. However, as the majority concedes, police awareness of Mrs. Balistreri's plight, by itself, does not create a "special relationship."

I agree that the existence of the restraining order proves more than that the police were on notice of Mrs. Balistreri's danger. For instance, it constitutes the basis for future enforcement proceedings. Proof of a violation of the order may give rise to a constitutional right to police protection and create an affirmative commitment that the state will enforce the order. However, contrary to the majority's view, the mere existence of the order creates no such duty.

No case has held that the existence of a restraining order establishes the requisite "special relationship." The district court in *Dudosh v. City of Allentown,* 665 F.Supp. 381, 390 (E.D.Pa.1987), a case the majority highlights, found that no special relationship of a constitutional dimension existed, even after specifically considering that a similar type of restraining order existed and that the police were aware of the victim's plight. The only other case directly on point—*Turner v. City of North Charleston,* 675 F.Supp. 314, 318–19 (D.S.C.1987)—similarly found that no special relationship existed.

Not only does the majority opinion cite little precedent in support of its theory, but it also fails to give the police helpful guidance in implementing its responsibilities. For example, how are the police to determine when a citizen's complaints are of such quantity and quality that a special relationship triggering the constitutional duty to protect is created? When does an ordinary, possibly frivolous, citizen complaint magnify to constitutional dimension?

If a citizen lodges a number of complaints, do those complaints trigger a constitutional duty on the part of the police, even though no restraining order has issued? How many complaints are necessary to create such a constitutional duty? How are the police to ascertain what level of response to the complaint is appropriate? At what point are the police required to file a written report, make a follow-up investigation, interrogate witnesses, make an on-site evaluation of the complaint, or arrest the alleged perpetrator? How are the police to balance the need to respond to a citizen's complaints with other demands placed on its services? How are the police to decide whether those other demands, which themselves trigger police obligations and potential liability, should be subordinated to its obligations to respond to the citizen's complaint? Are the complaints of a citizen protected by a restraining order given preferred status in terms of police response as against those of a citizen in equal need of police assistance, but who has not secured a restraining order/Does a wife-beating complaint to a local governmental agency, such as a municipal domestic relations commission, but not to the police, give rise to a duty of the police to protect under the due process clause? Does the citizen have a preexisting obligation to attempt to enforce the restraining order before the police's constitutional duty arises?

I acknowledge that certain hypothetical situations may give rise to a duty of protection by the police. For instance, where the police observe a fight brewing between two combatants, and they are aware of particular danger to the participants or to bystanders, then the police might arguably have a constitutional duty of protection to those likely to be injured. Similarly, the police have the constitutional obligation to protect an individual who it perceives to be the target of imminent attack by a lynch mob. Where hostilities are imminent, and the police are percipient to the conflict, the police can be said to be directly involved and may have a duty to stop the attack.

The Ninth Circuit, however, has previously ruled to the contrary. In *Escamilla v. City of Santa Ana*, 796 F.2d 266 (9th Cir.1986) (Schroeder, J.), the Circuit held that undercover officers had no constitutional duty to protect an innocent bystander, even though they personally observed a barroom brawl stirring, that one of the combatants, whom they knew had a criminal record, was carrying a gun, and they heard the other combatant tell his friend to get a gun. If, as *Escamilla* seems to hold, the police had no duty to intervene to protect third parties in a case where they were practically in the middle of the fight, then they have no duty to safeguard a victim such as Mrs. Balistreri on the facts of this case.