**Cynthia KETCHUM, Plaintiff-Appellant,**

**v.**

**COUNTY OF ALAMEDA; Alameda County Board of Supervisors; Sheriff Glenn Dyer; and Chief Ron Cain, Defendants-Appellees.**

No. 84–2510.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1987.

Decided March 2, 1987.

Valerie A. Murphy, Suzanne M. Trimble, Sacramento, Cal., for plaintiff-appellant.

Kathy M. Banke, Oakland, Cal., for defendants-appellees.

Before CHAMBERS, NELSON and NOONAN, Circuit Judges.

NELSON, Circuit Judge:

Cynthia Ketchum brought suit under 42 U.S.C. § 1983 (1982) against the County of Alameda and several county officers for their alleged gross negligence in failing to maintain security at an Alameda rehabilitation facility. Ketchum appeals the district court's grant of summary judgment in favor of the defendants. We have jurisdiction under 28 U.S.C. § 1291 (1982). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1981 James Hampton was incarcerated as a minimum security inmate at the Santa Rita Rehabilitation Facility in Alameda County. Hampton was being held at the facility for an alleged parole violation and was awaiting trial on burglary charges. On July 8, 1981, Hampton escaped the facility by cutting through a window security screen and climbing a fence. On September 17, 1981, more than two months after Hampton's escape, plaintiff-appellant Cynthia Ketchum was allegedly assaulted and raped by Hampton in her home in Sacramento, over fifty miles from the Santa Rita facility. Hampton was subsequently arrested and convicted of committing six rapes in Sacramento County.

Cynthia Ketchum filed suit under 42 U.S.C. § 1983 (1982)[1] against the County of Alameda, the County Board of Supervisors, and certain other county officers, alleging that they had been grossly negligent in maintaining security at the Santa Rita facility, thereby allowing Hampton's escape and causing the deprivation of her constitutional right to privacy and security of property. Ketchum did not allege any special relationship between herself and Hampton or between herself and the defendants.

Defendants moved for summary judgment on the grounds that (1) the criminal acts of a prison escapee do not constitute state action; and (2) there is no constitutional right to be protected from criminal acts of third parties absent a special relationship between the victim and the state or the victim and the criminal. The defendants based their argument that Ketchum failed to state a cause of action under § 1983 on the following undisputed facts: (1) over two months elapsed between the escape and the rape; (2) defendants had no knowledge that Ketchum was in

---

1. Cynthia Ketchum has no cause of action under California law because the California legislature has provided absolute immunity to public entities and employees for injuries caused by parolees or escapees. The statute provides:

   Neither a public entity nor a public employee is liable for:

   (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release.

   (b) Any injury caused by:

   (1) An escaping or escaped prisoner;

   (2) An escaping or escaped arrested person; or

   (3) A person resisting arrest.

   Cal.Gov't Code § 845.8 (West 1980).

   The Law Revision Commission Comment explained the reason for enacting this statute:

   This section is a specific application of the discretionary immunity recognized in California cases and in Section 820.2. The extent of the freedom that must be accorded to prisoners for rehabilitative purposes and the nature of the precautions necessary to prevent escape of prisoners are matters that should be determined by the proper public officials unfettered by any fear that their decisions may result in liability.

   *Id.* Law Revision Commission Comment (1963 Addition).

any special danger from Hampton that distinguished her from the public at large; and (3) no special relationship existed between Ketchum and the defendants.

On January 4, 1984, the district court denied defendants' motion for summary judgment. Defendants filed a motion for reconsideration. The district court granted the motion for reconsideration, reversed its earlier denial of defendants' motion for summary judgment, and granted defendants' motion for summary judgment on August 30, 1984. Ketchum filed a timely notice of appeal on September 27, 1984.

### ISSUES PRESENTED

1. Whether the district court erred in concluding that Hampton's rape did not constitute state action under 42 U.S.C. § 1983.
2. Whether the district court erred in concluding that Ketchum had no constitutional right to be protected by the County of Alameda against criminal acts of third parties absent a special relationship with the state or the criminal.

### STANDARD OF REVIEW

This court reviews a district court's grant of a motion for summary judgment de novo. *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir.1985). The evidence is viewed in the light most favorable to the party opposing the motion. *Id.* The appellate court affirms only if there is an absence of any genuine issue of material fact and if the moving party is entitled to judgment as a matter of law. *Id.*

### DISCUSSION

■ This court has noted that the first question in any § 1983[2] action is whether the section is the appropriate basis for a remedy. *Haygood v. Younger*, 769 F.2d 1350, 1353 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). A § 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (*i.e.*, state action), and (2) the conduct must deprive the plaintiff of a constitutional right. *Id.*, 106 S.Ct. at 1354.

### I. STATE ACTION UNDER 42 U.S.C. § 1983

■ The United States Supreme Court addressed the issue of state action in the context of third-party crimes in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). A parolee, who had been released from state prison five months earlier, murdered a young girl. The girl's parents brought an action under § 1983 against the state officers responsible for the parole decision. The Court concluded that although the parole decision was state action, the act of a parolee five months after his release "cannot be fairly characterized as state action." *Id.* at 285, 100 S.Ct. at 559. The Court reasoned that the parolee was "in no sense an agent of the parole board" and that the girl's murder was "too remote a consequence of the parole officers' action to hold them responsible under the federal civil rights law." *Id.* In discussing remoteness, the Court considered not only the lapse of time, but also the fact that the decedent did not stand in any special relationship to the parolee from which the state officers might have inferred a special danger to her, distinguishable from the danger the public at large faces from parolees. *Id.* The Court, in effect, found that the parole officers' decision did not proximately cause the deprivation of the girl's life despite the fact that the parole board knew, or should have

---

**2.** Section 1983 provides in pertinent part,
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the dep-

rivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
42 U.S.C. § 1983 (1982).

known, that the prisoner's release "created a clear and present danger" that a crime would occur. *Id.* at 280, 100 S.Ct. at 556.

The analysis in *Martinez* is particularly germane to the present case because the plaintiffs, like Ketchum, had no recourse under state tort law. The same California statute grants absolute immunity to public employees and entities from liability for crimes of parolees *or* escapees. Cal.Gov't Code § 845.8 (West 1980). The Court upheld the constitutionality of the California statute, *see Martinez*, 277 U.S. at 280–83, 100 S.Ct. at 556–58, and despite the absence of an alternative state remedy, held that there was no cognizable claim under § 1983. *Id.* at 283–85, 100 S.Ct. at 558–59.

Ketchum argues that *Martinez* is distinguishable because it addresses parolees rather than escapees. She contends that a discretionary decision to release an inmate on parole should be analyzed differently from an escape that is the result of allegedly grossly negligent confinement practices.[3] However, although an escape is factually distinguishable from a parole decision, the analysis of state action and constitutional deprivation in *Martinez* and its progeny is based on factors that are not affected by that factual difference (*e.g.*, lapse of time between custody and crime, remoteness of crime from official actions, lack of special relationship between state and victim).

In fact, the Ninth Circuit has not narrowly confined *Martinez* to its facts, but views it as relevant, if not controlling, to other cases addressing state officers' liability for "death at the hands of a third party." *Escamilla v. Santa Ana*, 796 F.2d 266, 269 (9th Cir.1986). In *Escamilla*, the court applied the *Martinez* analysis to a case in which two undercover officers, present at a barroom shooting, were sued under § 1983 by the victim's survivors for failing to intervene in time to save the victim's life. In finding there was no basis to impose liability under § 1983, the court observed that *Martinez* "illustrates the principle that state officials do not violate due process rights, and hence are not liable under section 1983, for every injury in which they play some causal role." *Id.*

The district court in the instant case found the facts to be "in all important respects ... indistinguishable from *Martinez*." First, over two months passed between the time of Hampton's escape and the crime. *See Janan v. Trammell*, 785 F.2d 557, 559–60 (6th Cir.1986) ("We do not believe that the Supreme Court [in *Martinez*] intended to provide us with a due process timetable such that a five-month gap does not deprive one of due process rights while a two-month gap automatically does"); *Humann v. Wilson*, 696 F.2d 783, 784 (10th Cir.1983) (stating that the difference in time between five months in *Martinez* and two months between parole and crime is not sufficient to distinguish the cases). Hampton was not an agent of the state prison officials, just as the parolee in *Martinez* was not a state agent. Hampton's crime was remote from any official acts in terms of both time (2 months and 9 days) and geography (50 miles). Second, it is undisputed that there was no special relationship between Ketchum and the state or the victim. Therefore, Hampton's status as an escapee does not affect the

---

**3.** The Supreme Court recently addressed the issue of negligence as a basis for state liability under § 1983 in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The Court in *Daniels* reviewed a prisoner's claim that prison officials had violated his due process rights by negligently leaving pillows on prison stairs on which the prisoner stumbled and injured himself. *Id.*, 106 S.Ct. at 663. The Court held that more than negligence is required for due process violations to be actionable under § 1983. *Id.* However, in a footnote, the Court left open "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Id.*, 106 S.Ct. at 667 n. 3. Because the Court has not resolved whether gross negligence is sufficient to support a claim of constitutional deprivation, the analysis in this case is not controlled by *Daniels*, but by the cases discussed *infra* regarding state officials' liability for third-party crimes. *See Janan v. Trammell*, 785 F.2d 557, 559 (6th Cir.1986) (discussing applicability of *Martinez* rather than *Daniels* to third-party crime context in a § 1983 cause of action).

state action analysis that the courts have applied to parolees under § 1983.

## II. CONSTITUTIONAL DEPRIVATION UNDER § 1983

■ The second element of a § 1983 action is that the defendant's conduct must deprive the plaintiff of rights "secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (1982); *see also Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986). The prevailing rule in the circuits is that citizens have no constitutional right to be protected by the state from attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public. *See, e.g., Escamilla v. Santa Ana,* 796 F.2d 266, 270 (9th Cir. 1986); *Estate of Gilmore v. Buckley,* 787 F.2d 714, 719 (1st Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986); *Jones v. Phyfer,* 761 F.2d 642, 646 (11th Cir.1985); *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984); *Fox v. Custis,* 712 F.2d 84, 87–88 (4th Cir. 1983); *Humann v. Wilson,* 696 F.2d 783, 784 (10th Cir.1983). In defining this "special relationship," courts have considered whether there is a custodial relationship created or assumed by the state, whether the state is aware of a specific risk of harm to the plaintiff, *see, e.g., Fox,* 712 F.2d at 88, or whether the state has affirmatively placed the plaintiff in a position of danger, *see, e.g., Estate of Gilmore,* 787 F.2d at 722. The guiding principle that emerges from the cases following *Martinez* is that

> generally, the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state.

*Wright v. City of Ozark,* 715 F.2d 1513, 1515 (11th Cir.1983). The Seventh Circuit has further clarified the rationale behind the absence of a constitutional right to protection from criminals:

> There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. But there is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution.

*Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) (citations omitted).

Ketchum does not dispute that she was simply a member of the public at large. In the absence of a special relationship with the state or the criminal, she had no federal constitutional right to state protection from criminal attacks. She therefore failed to meet the threshold requirement under § 1983 of establishing that the state deprived her of a constitutional right.

### CONCLUSION

The district court correctly concluded that Hampton's attack on Ketchum did not constitute state action under § 1983. It also correctly decided that Ketchum had no constitutional right to protection by the state from third-party crimes in the absence of any special relationship with the state or the criminal. As the district court noted, she was "in just the same position as the victims in *Martinez, Humann,* and *Wright*—the unfortunate victim of [a] criminal act."

AFFIRMED.