Suzette **IGARTUA–OLIVIERI,** personally and in representation of the Estate of her deceased mother, Margarita Olivieri–Diaz, and herself represented by her father Héctor Igartúa–Vargas, Plaintiffs,

v.

**COMMONWEALTH OF PUERTO RICO,** Department of Health of the Commonwealth of Puerto Rico et al., Defendants.

### Civ. No. 87–1417CC.

United States District Court,
D. Puerto Rico.

Aug. 10, 1988.

---

Francisco M. López–Romo, Benjamín Hernández–Nieves, San Juan, P.R., for plaintiffs.

María L. Jiménez, Federal Litigation Div., Dept. of Justice, Com. of P.R., San Juan, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This case arises out of the October 21, 1986 stabbing of Margarita Olivieri–Díaz by Guillermo Mendoza–Hernández. The victim subsequently died of the injuries sustained when the assailant attacked her at the Caparra Travel Agency. It is alleged that at the time of the incident Mendoza–Hernández was, and had been for twenty years, an ambulatory patient at the Psychiatric Hospital and/or Forensic Psychiatric Hospital at the Río Piedras Medical Center, where he was under treatment for a long and consistent history of violent behavior against persons and property.

Defendants are the Commonwealth of Puerto Rico itself, the state Department of Health, the hospitals where the assailant was allegedly treated, various doctors who allegedly treated him, their wives and conjugal partnerships, and various unknown insurers of the above.

The basis for the complaint is that Mendoza–Hernández was in no condition to be treated as an ambulatory patient, that he did not receive the necessary and proper medical care, treatment and surveillance, and that this failure to adequately deal with him constituted gross and inexcusable negligence and was the proximate cause of the violation of Olivieri–Díaz' civil rights which led to her death. It is further alleged that "through the defendants' fault and/or negligence, through their acts and/or omissions Margarita Olivieri–Díaz was deprived, under color of law, of her civil rights and constitutional right to due process and equal protection."

The case is before us on two motions to dismiss. In the first, the Commonwealth, the Department of Health and the hospitals argue that the suit is barred by the Eleventh Amendment and doctrine of sovereign immunity. Dr. Izquierdo–Mora and his wife contend that the complaint fails to state a claim under 42 U.S.C. 1983 against them. In the second motion to dismiss, filed by Drs. Alonso Santiago, Cordero Alonso, Alvarez–Silva, Martínez–Segarra and their respective wives and conjugal partnerships, it is argued that the claims against them are not cognizable under 42 U.S.C. Section 1983.

Having reviewed the facts of the case as set out in the complaint in light of applicable law and jurisprudence, we find that plaintiffs have failed to state a cause of action under the Civil Rights Act against the defendants.

The Supreme Court addressed the matter of Section 1983 actions against state officials for deprivation of rights related to wrongful death at the hands of a third party in the case of *Martínez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). In that case survivors of a fifteen-year old girl who had been tortured and murdered by a parolee, who had been convicted of attempted rape, five months after he was placed on parole brought an action against those state officials responsible for the parole release decision. It was alleged that the parole officials' conduct in releasing the parolee, a mentally disturbed, convicted, sex offender not amenable to treatment who had been imprisoned without recommendation for parole, had deprived the victim of her life without due process of law. The Court assumed that the parolee's release created a clear and present danger that an incident such as

the killing would occur. In a unanimous decision, the Court found that the survivors did not allege a claim for relief under federal law in that the Fourteenth Amendment protected their decedent from deprivation, by the *State*, of life without due process of law. It held that although the decision to release the parolee was an action by the state, the parolee's criminal action five months later could not be characterized as state action. The Court found that in the particular circumstances of the case, where the parolee was in no sense an agent of the Parole Board, and the Board was not aware that the victim, as distinguished from the public at large, faced any special danger, the girl's death was too remote a consequence of the defendants' action to hold them responsible under Section 1983. *Id.* at 285, 100 S.Ct. at 559.

A Section 1983 claim requires two essential elements: (1) the conduct that harms the victim must be committed under color of state law (*i.e.* state action), and (2) the conduct must deprive the plaintiff of a constitutional right. *Ketchum v. Alameda County*, 811 F.2d 1243 (9th Cir.1987).

■ *Martinez, supra,* addresses in detail the issue of state action in the context of third-party crimes. As stated above, the Court in that case found that the parolee was in no sense an agent of the Parole Board, and that the Board was not aware that the decedent, as distinguished from the public at large, faced any special danger. *Id.*, 444 U.S. at 285, 100 S.Ct. at 559. Although a Section 1983 action claim has been described as a species of tort liability, it is perfectly clear that not every injury in which a state official has played some part is actionable under the statute. *Id.*

The second element necessary in a Section 1983 action is that the defendant's conduct must deprive the plaintiff of rights "secured by the Constitution and laws" of the United States. *Ketchum, supra,* at 1247. Stating that "[n]othing in the fourteenth amendment or its history ... suggests that it was written to provide an expansive guarantee of state protective services," the Court of Appeals for the First Circuit recently held that there is no

constitutional right to be protected by the state from being murdered by criminals or mad men. *Estate of Gilmore v. Buckley,* 787 F.2d 714, 720 (1st Cir.1986), quoting *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982). This view has been supported in other circuits. *See e.g., Ketchum, supra, Escamilla v. Santa Ana,* 796 F.2d 266, 270 (9th Cir.1986); *Janan v. Trammell,* 785 F.2d 557, 560 (6th Cir.1986); *Jones v. Phyfer,* 761 F.2d 642, 646 (11th Cir.1985); *Jackson v. Byrne,* 738 F.2d 1443, 1446 (7th Cir.1984); *Fox v. Custis,* 712 F.2d 84, 87–88 (4th Cir.1983); *Humann v. Wilson,* 696 F.2d 783, 784 (10th Cir.1983).

> [G]enerally the due process clause of the Constitution does not protect a member of the public at large from the criminal acts of a third person, even if the state was remiss in allowing the third person to be in a position in which he might cause harm to a member of the public, at least in the absence of a special relationship between the victim and the criminal or between the victim and the state.

*Wright v. City of Ozark,* 715 F.2d 1513, 1515 (11th Cir.1983). The First Circuit, however, has found that even where the defendants knew or should have known that the perpetrator was a special danger to the victim, it did not necessarily create a special relationship of constitutional dimensions between the state and the victim, such that failure to protect the victim resulted in a violation of due process. *See Estate of Gilmore, supra.* The Court in that case also ruled out temporal proximity between the state official's action and the victim's murder, as creating a constitutional duty. *Id.* at 721. The Court made the following summary:

> For there to be a special relationship implicating the fourteenth amendment, we believe the state must be more directly implicated than it is here in the events causing the victim's death—as perhaps (although we need not decide) when the state, by exercising custody or control over the plaintiff, effectively strips her of her capacity to defend herself, or affirmatively places her in a position of

danger that she would not otherwise have been in.

*Id.* at 722.

Judge Adams of the Court of Appeals for the Third Circuit, quoted with approval in *Estate of Gilmore, supra,* succinctly analyzes the scope of Section 1983:

> [I]t bears emphasis that Section 1983 was enacted to deal primarily with acts of discrimination by state officials. There is a danger that by extending this important legislation to contexts for removed from Congress' original and overarching purposes, a national state tort claims act administered in the federal courts in effect will be created. Steps in that direction should not be lightly taken since the ultimate outcome of such a course might well be incongruent with our role as federal judges. When a court extends a statute far beyond what was contemplated by Congress, it transgresses the concept of separation of powers.

*Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 513 (3rd Cir.1985) (Adams, J., dissenting).

In sum:

> There is a constitutional right not to be murdered by a state officer, for the state violates the Fourteenth Amendment when its officer, acting under color of state law, deprives a person of life without due process of law. But there is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution.

*Ketchum, supra,* at 1247, citing *Bowers v. De Vito,* 686 F.2d 616, 618 (7th Cir.1982).

█ Analyzing the facts of the case before us in light of the applicable case law, we find that the plaintiffs have failed to state an actionable cause under Section 1983.[1] This is not to say that plaintiffs do not have a cause of action under state law,

---

1. Because this conclusion is applicable to all defendants we need not enter into a discussion of the claims of sovereign immunity/Eleventh

but such was not raised in the complaint before us.

For the above-stated reasons, the motions are GRANTED and the complaint is DISMISSED.

SO ORDERED.

Amendment protections raised in the December 17, 1987 motion.