**HAWAI'I COUNTY GREEN PARTY,**
Florida Coalition for Peace and
Justice, Plaintiffs,

v.

**William Jefferson CLINTON, President of the United States, in his official capacity, John Gibbons, Director, Office of Science and Technology Policy, in his official capacity, Daniel Goldin, Administrator, National Aeronautics and Space Administration, in his official capacity, Defendants.**

CV. Nos. 97–01422DAE, 97–01423DAE.

United States District Court,
D. Hawai'i.

Oct. 11, 1997.

Order Denying Reconsideration
Oct. 17, 1997.

---

Lanny Sinkin, Hilo, HI, for Plaintiffs.

Michael Chun, U.S. Attorney's Office, Honolulu, HI, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

DAVID ALAN EZRA, District Judge.

The court heard Plaintiffs' Motion for Temporary Restraining Order and Plaintiffs' Preliminary Injunction on October 10, 1997. Lanny Sinkin, Esq., appeared at the hearing on behalf of Plaintiffs; Assistant United States Attorney Michael Chun, and Department of Justice Attorneys Anthony Hoang and Martin Lalonde, appeared at the hearing on behalf of Defendants. After reviewing the motions and the supporting and opposing memoranda, the court DENIES Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction.

### BACKGROUND

On October 3, 1997, Defendant William Jefferson Clinton, President of the United States of America ("the President") authorized the launch of the Cassini Mission. The Cassini Mission is set to launch from Cape Canaveral Air Force Station in Florida on October 13, 1997. The Cassini Mission involves a space probe that will be launched aboard a Titan IV/Centaur rocket to Saturn solely dedicated to the study of the planet, its rings and its moons. The probe will carry 72.3 pounds of Plutonium–238 as a power supply. The spacecraft is equipped with 12

scientific experiments on a seven year journey to Saturn. The probe is to orbit Saturn for four years. In order to travel the long distance to Saturn the spacecraft will boost its speed by utilizing the gravitational energy from three planets including Earth. The spacecraft is scheduled to obtain a gravity assist from Earth in August, 1999.

Preparation for the Cassini Mission has been ongoing for over a decade. It involves a joint effort by the European Space Agency, the Italian Space Agency, and NASA, and cost the United States approximately $3.3 billion dollars. NASA completed both a Final Environmental Impact Statement ("FEIS") in 1995, and a Supplemental Environmental Impact Statement ("SEIS") in 1997. Both of these documents were available to the public for review and comment. In its final conclusions, NASA found that there were only "small risks associated with the Cassini Mission," and that the Cassini Mission should be scheduled to launch in October, 1997. Record of Decision, Supplemental Environmental Impact Statement dated August 12, 1997, at 5–6. NASA then requested approval of the Cassini Mission from the President in a letter dated August 15, 1997, pursuant to Presidential Directive/National Security Council Memorandum (PD/NSC–25), dated May 8, 1996. The letter was prepared by Defendant Daniel S. Goldin ("Goldin"), of NASA, and forwarded to Defendant John H. Gibbons ("Gibbons"), the Assistant to the President for Science and Technology. The Executive Branch announced approval on October 3, 1997.

Plaintiff Hawaii County Green Party ("HCGP") is a political organization. Almost all of the members HCGP live and own property in the County of Hawaii on the Island of Hawaii. Plaintiff Florida Coalition for Peace and Justice ("FCPJ") is a not for profit organization with members residing adjacent to the launch site for the Cassini Mission.

On October 7, 1997, Plaintiffs filed an action for a temporary restraining order, preliminary injunction and permanent injunction to prohibit the launch of the Cassini Mission until October 23, 1997. Plaintiffs' Motion for Temporary Restraining Order is based upon a claim under 42 U.S.C. § 1983 and deprivation of procedural due process. On October 7, 1997, Plaintiffs filed a second complaint alleging that the decision to launch the Cassini Mission violated the National Environmental Policy Act ("NEPA"). Defendants filed opposition to the motion for temporary restraining order on October 9, 1997, and on October 10, 1997, Defendants filed opposition to Plaintiffs' motion for preliminary injunction.

## STANDARD OF REVIEW

A temporary restraining order is restricted to its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as it is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974). The restrictions contained in Fed.R.Civ.P. 65(b)[1] are "stringent" and "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Id.* The Ninth Circuit authorizes the court to issue a temporary restraining order if: (1) the motion raises serious questions on the merits; and (2) the balance of hardships tips sharply in the moving party's favor. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *Dumas v. Gommerman*, 865 F.2d 1093, 1095 (9th Cir. 1989). These standards are not two distinct tests, but are treated as "the opposite ends of a single 'continuum in which the

---

1. Fed.R.Civ.P. 65(b) provides that:
 A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any which have been made to give the notice and the reasons supporting the claim that notice should not be required. Fed.R.Civ.P. 65(b).

required showing of harm varies inversely with the required showing of meritoriousness.'" *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9ᵗʰ Cir. 1987) (quoting *San Diego Comm. Against Registration etc. v. Governing Bd. of Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9ᵗʰ Cir. 1986)).

■ Pursuant to Rule 65, a plaintiff seeking a preliminary injunction must meet the same standard. The "party seeking the injunction must demonstrate that it will be exposed to some significant risk of irreparable injury.... A plaintiff must do more than merely allege imminent harm sufficient to establish standing, he ... must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Associated Gen. Contractors of Cal., Inc. v. Coalition for Economic Equity,* 950 f.2d 1401, 1410 (9ᵗʰ Cir. 1991). In cases involving public interest the court must also consider whether the public interest favors the plaintiff.

## DISCUSSION

### I. MOTION FOR TEMPORARY RESTRAINING ORDER.

#### A. Likelihood of Success on the Merits.

##### 1. Violation of 42 U.S.C. § 1983.

■ Plaintiffs allege a likelihood of success on the merits of their claim under 42 U.S.C. § 1983. Plaintiffs are incorrect.

To state a claim for violation of § 1983, a plaintiff must show that the defendant acted under color of state law, and that the defendant's conduct must have deprived the plaintiff of a constitutional right. *Ketchum v. County of Alameda,* 811 F.2d 1243, 1245 (9ᵗʰ Cir. 1987). By its own language § 1983 only applies to those individuals acting under color of *state* law. 42 U.S.C. § 1983 (West Supp. 1997). Section 1983 does not apply to federal defendants acting pursuant to federal law, as is the case here. Since Plaintiffs

cannot properly allege a cause of action against Defendants under § 1983, the court DISMISSES Plaintiffs' claim for violation of 42 U.S.C. § 1983.

##### 2. Deprivation of Procedural Due Process Rights Under the Administrative Procedures Act and NEPA.

Plaintiffs also assert that they were deprived their constitutionally protected procedural due process rights to challenge the decision to launch the Cassini Mission. The agency decision can be reviewed under 5 U.S.C. § 702, the Administrative Procedures Act ("APA"). Section 702 states that "[a] person suffering legal wrong because of agency action ... within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (West 1996).[2] Plaintiffs claim that Defendants violated the requirements of NEPA when the decision to launch the Cassini Mission was made. Furthermore, Plaintiffs claim that by not allowing enough time for Plaintiffs to challenge the agency decision, that Defendants violated Plaintiffs' right to procedural due process. Plaintiffs request that the Cassini Mission be postponed to protect their right to procedural due process and allow them to obtain meaningful review of the agency decision.

Plaintiffs allege that the agency decision did not become final until October 3, 1997, when the White House made the announcement that the Cassini Mission was scheduled for October 13, 1997. Plaintiffs contend that since the decision did not become "final" until that date, they were left only nine days to vindicate their due process rights. Essentially, Plaintiffs argue that if the temporary restraining order is not granted in this action, they will be deprived of their due process rights to be heard in their separate lawsuit (Cv. No. 97–01423DAE)[3].

Plaintiffs assert that there is a likelihood of success on the merits of this action because "this court would find nine days as insuffi-

---

**2.** The "relevant statute" in this instance is NEPA, which provides for environmental assessment and impact reports when federal agencies make decisions significantly affecting the quality of the human environment. 42 U.S.C. § 4332 (West 1994).

**3.** Plaintiffs' two complaints, CV NO. 97–01422DAE and CV NO. 97–01423DAE, were consolidated by the court on October 10, 1997.

cient time to prepare, file, litigate, decide and secure a decision, and exhaust appeals for litigation challenging the decision by NASA to launch the Cassini Mission." Plaintiffs' Memorandum at 6.

First, Defendants point out that Plaintiffs failed to clearly indicate the source of the liberty or property interest that is the basis of the procedural due process right. Defendants' Opposition at 15 n. 9. Second, Defendants contend that "nothing in the Fifth Amendment requires the government . . . to postpone taking action in order to allow a full trial on the merits of any potential lawsuit." *Id.* at 14. Defendants assert that Plaintiffs have in fact been heard on their claims under NEPA and the APA. Basically, Defendants argue that Plaintiffs cannot now show a likelihood of success on the merits of their procedural due process claim because the court agreed to hear their NEPA and APA claims, and therefore Plaintiffs have received procedural due process.

■ To allege a claim for deprivation of procedural due process the plaintiff must show that there has been deprivation of a property or liberty interest protected by the due process clause of the Fifth Amendment. *Richardson v. Koshiba*, 693 F.2d 911, 916 (9th Cir. 1982). Defendants are correct in their assertion that Plaintiffs have not specifically set forth the origin of their due process right. The court assumes that judicial review under NEPA and the APA is the protected right at the center of Plaintiffs' procedural due process claim.

The Administrative Procedures Act ("APA") only allows judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (West 1996).

Plaintiffs argue that the final agency decision was not made until October 3, 1997, when the President authorized the launch of the Cassini Mission for October 13, 1997. Defendants contend that the agency decision was final on or about August 15, 1997, when Goldin forwarded to Gibbons, the science advisor to the President, a request for nuclear launch safety approval of the Cassini Mission. Consequently, Defendants maintain that Plaintiffs had ample time to file a lawsuit to protect their due process rights. This court agrees.

a. *Finality of Agency Decision.*

■ The President is not considered a Federal agency within the meaning of NEPA. 40 C.F.R. § 1508.12. Therefore, Plaintiffs cannot allege that the President's decision on October 3, 1997, is reviewable under NEPA and the APA. The final agency action taken by NASA was taken on or about August 15, 1997, after NASA made its final decision regarding the Cassini Mission, and then requested Presidential approval of the launch.

Therefore, Plaintiffs' claim that they were denied procedural due process because of the short time period between the decision to launch the Cassini Mission, and the date set to launch the Mission, fails. It would be inappropriate for the court to allow Plaintiffs to use the judicial process to delay the launch of the Cassini Mission, on procedural due process grounds, in the eleventh hour, merely because they determined not to prosecute the action until after a Presidential decision was made. The court finds that the Plaintiffs were aware of the final decision made by NASA, and had ample opportunity to vindicate their due process rights months prior to the filing of this action.

b. *Procedural Due Process.*

■ Furthermore, Plaintiffs cannot establish a likelihood of success on the merits of the claim for deprivation of procedural due process, because Plaintiffs have not demonstrated that they will be deprived of procedural due process. The court has already heard and carefully considered Plaintiffs' Motion for Preliminary Injunction on Plaintiffs' NEPA and APA claims. Because the court heard the Motion for Preliminary Injunction on October 10, 1997, Plaintiffs procedural due process rights have been protected. Plaintiffs therefore had an adequate opportunity to obtain judicial review of the agency decision regarding the Cassini Mission given the time constraints that they themselves created.

### B. *Irreparable Injury.*

Even if the court did find that Plaintiffs demonstrated a likelihood of success on the merits of their procedural due process claim, Plaintiffs are still unable to show irreparable injury.

Plaintiffs assert that they will suffer irreparable injury if the temporary restraining order is not issued because it will deny them of their right to seek judicial review of an agency decision. Plaintiffs' Memorandum at 5. This is Plaintiffs only allegation in their motion for temporary restraining order.

Because Plaintiffs moved for preliminary injunctive relief on their claim under NEPA, and because the court heard that motion, Plaintiffs' assertion that the temporary restraining order is necessary to protect their right to judicial review is not supported. Plaintiffs have therefore failed to demonstrate that they will suffer irreparable harm if the temporary restraining order is not granted.

### II. *MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION.*

In their second action, Plaintiffs request judicial review of NASA's decision making process to ensure that it comports with the requirements of NEPA. Plaintiffs assert that Plutonium–238, the substance that will be used on the Cassini Mission, is the most hazardous substances "known when ingested." Plaintiffs' Complaint at 4. Plaintiffs allege that the decision to launch the Cassini Mission was arbitrary and capricious because it was not "based on rational assumptions, reliable methodology, or historically known data and is otherwise flawed to the extent that the decision violates the requirements of ... [NEPA]." *Id.*

### A. *National Environmental Policy Act.*

When Congress enacted NEPA it did so because it found that the Federal Government has a "continuing responsibility ... to use all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal Plans, functions, programs, and resources" to protect the environment and the renewable re-

sources. 42 U.S.C. § 4331 (West 1994). Therefore, Congress required that when a federal agency anticipates taking

> major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official [shall be included in every recommendation or report] on:
>
> (i) the environmental impact of the proposed action,
>
> (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
>
> (iii) alternatives to the proposed action,
>
> (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
>
> (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(2)(C) (West 1994). Copies of the environmental impact statements and any comments by other agencies shall be made available to the public. *Id.* If NEPA requirements are not complied with, judicial review under the APA can be sought.

 This court is allowed limited review of an agency decision. Pursuant to the APA, the court can hold an agency decision unlawful and set the agency decision aside only if the court finds the agency's conclusions are "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706 (West 1996); *see also Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376–77, 109 S.Ct. 1851, 1860–61, 104 L.Ed.2d 377 (1989) (finding that an agency's Environmental Impact Statement can be reversed only if it is arbitrary, capricious, or an abuse of discretion). The court is required to ensure that the agency took a "'hard look' at the environmental consequences of its actions." *Friends of the Payette v. Horseshoe Bend Hydroelectric Co.,* 988 F.2d 989, 993 (9th Cir. 1993). At the same time, the court shall remain deferential to the expertise of the agency. *Natural Resources Defense Counsel, Inc. v. Hodel,* 819 F.2d 927, 929 (9th Cir. 1987). The Ninth

Circuit requires the reviewing court to determine "whether the [impact statement] contains a reasonably thorough discussion of the significant aspects of the probability of environmental consequences ... [by determining] whether the [statement's] form, content and preparation foster both informed decision-making and informed public participation." *California v. Block,* 690 F.2d 753, 761 (9th Cir. 1982).

### B. *Plaintiffs' Complaint.*

Plaintiffs allege that NASA's final decision to launch the Cassini Mission was arbitrary and capricious. Plaintiffs' complaint sets out two allegations with respect to NASA's decision making. First, Plaintiffs assert that NASA did not properly balance the risks of the Cassini Mission against the benefits. Plaintiffs' Memorandum at 8–9. Plaintiffs also challenge NASA's conclusions as to health effects, and claim they are illogical. Plaintiffs also contend that NASA manipulated the results to produce a prediction of "least possible effects." *Id.* at 13. Plaintiffs allege in effect that NASA minimized the environmental effects of the re-entry of the plutonium into the Earth's atmosphere, and that this "flies in the face of known scientific fact and common sense." *Id.* at 14. Finally, Plaintiffs argue that NASA's gross underestimation of the likelihood of the Challenger disaster helps to show that the probability estimates of the Cassini Mission are also the product of unreliable guesswork. *Id.* at 17.

Second, Plaintiffs argue that NEPA requires the study of alternative methods like solar power. Plaintiffs contend that NASA did not adequately consider alternatives to plutonium in their environmental impact statements. *Id.* at 21. Plaintiffs support their arguments by highlighting problems in the research phase of the Galileo Mission, claiming that these problems call NASA's decision regarding the Cassini Mission into question.

Defendants maintain that Plaintiffs' complaint merely disputes the conclusions that NASA reached in its analysis of the consequences of the Cassini Mission. Defendants' Opposition at 22. Defendants submit that Plaintiffs do not allege NASA failed to consider an inadvertent re-entry of the probe and the total release of plutonium, but simply take issue with Defendants' conclusion as to its likelihood and effect. Defendants also argue that Plaintiffs do not allege that NASA failed to consider the possibility of a solar-powered mission to Saturn, only that NASA's conclusion that it was not a technically feasible alternative is wrong. Because Plaintiffs are unable to demonstrate why NASA's conclusions are without substantial basis in fact, Defendants believe that Plaintiffs' claims lack merit.

### C. *Likelihood of Success on the Merits.*

■ The evidence presented by Plaintiffs at this time does not establish a likelihood of success on the merits. At this stage of the proceedings, the court is required to decide if Plaintiffs raise serious questions on the merits. In their motion and their complaint, Plaintiffs' make broad assertions regarding Defendants' actions with respect to NEPA. Plaintiffs support their argument with more assertions regarding previous problems with other NASA projects. There is very little discussion about the decision making process with respect to the Cassini Mission. As of now, Plaintiffs have not shown the court that they have a likelihood of success on the merits.

Plaintiffs' allegations regarding NASA's risk/benefit analysis are essentially conjecture at this point. Plaintiffs may disagree with NASA's decisions, but to meet the extraordinary requirements necessary to obtain a preliminary injunction, Plaintiffs must produce evidence sufficient to support the conclusion that they are likely to succeed on their claim that NASA acted in an arbitrary and capricious manner. The declarations submitted by Plaintiffs are not enough to meet the standard. Much of what is said in the declarations refers to general research on plutonium, the solar alternative, as well as research regarding previous NASA missions. Defendants, on the other hand, have demonstrated to the court that environmental consequences, potential accident scenarios and potential health risks were carefully and adequately considered in the research for the Cassini Mission. The court is not entitled to

second guess the expertise of the federal agency, it can only inquire into whether all required considerations were made.

Plaintiffs have also failed to show that they can succeed on their claim that Defendants did not adequately consider the solar alternative. In both the FEIS and the SEIS, NASA noted that because of the vicinity of Saturn, where the Sun's intensity is only 1% of that experienced by the Earth, the use of "RTGs was identified as the only feasible power system." Final Environmental Impact Statement for the Cassini Mission dated June, 1995 at 2–12. Defendants found that solar power was not at this time a feasible alternative to operate the Cassini spacecraft. Plaintiffs have therefore failed to show a likelihood of success on their claim that NASA did not adequately consider the alternative solar power source.

The court therefore finds that Defendants have taken a "hard look" at the environmental consequences and relevant alternatives as required by NEPA.

D. *Irreparable Harm.*

 Plaintiffs must also show that absent injunctive relief, they will suffer irreparable harm. As noted above, the court must be convinced that the balance of the hardship tips sharply in the moving party's favor in order for a preliminary injunction to be granted. *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980).

Plaintiffs allege that they seek to prevent the "fall out" from NASA's decision to launch the Cassini Mission. Plaintiffs' Memo. at 26. If injunctive relief is not granted Plaintiffs insist that they will suffer irreparable harm for three reasons: (1) a spacecraft that has the potential to fail at launching, with devastating results, will be launched; (2) a spacecraft will travel in space for two years, and then return to the Earth's atmosphere with the potential to start the nightmare all over again; and (3) agencies which have demonstrated a cavalier approach toward safety will be encouraged to continue with such an attitude, with twelve more radioactive launches scheduled. *Id.* at 28. Plaintiffs contend that on these facts, the balance tips in their favor.

Defendants debate Plaintiffs' assertion of irreparable harm. They explain that Plaintiffs allege the most remote possibility of harm, while Defendants can attest that, without a doubt, they will suffer significant concrete harm if the preliminary injunction is entered. Defendants' Memo. at 34. Although, Defendants assert that they will be irreparably harmed for several reasons, the court finds that the following reasons are the most telling. First, the court finds it significant that the launch procedures have already begun. The Cassini spacecraft is already fueled and on the launch pad. The court was also advised that the plutonium payload was to be loaded on the spacecraft on October 10, 1997. There are significant risks associated with allowing the spacecraft to sit on the launch pad fueled and loaded. The real possibility of leakage of the fuel due to the delay, is a significant factor in determining the harm to Defendants.

Second, Defendants insist that each day of delay would risk advances in scientific understanding. Any delay reduces the probability of launching the Cassini Mission during the primary launch period. Declaration of Donald F. Draper at ¶ 8. During each day there is only a 140 minute launch window due to the Earth's rotations. *Id.* at ¶ 6. The primary launch period is already limited by satellites and space debris orbiting the Earth, and by temperamental weather patterns, this makes every day "a scarce resource." *Id.* at ¶ 8. Furthermore, Defendants submitted evidence that if the Cassini Mission is forced to launch after the primary launch period, it will result in a reduced scientific return by about 1 to 2 percent. *Id.* ¶ The Government has expended approximately $3.3 billion dollars on the Cassini Mission, and the loss of scientific returns significantly reduces the return on the Government's investment. Defendants' Opposition at 35.

Furthermore, Defendants allege that each day of delay beyond October 13, 1997, costs NASA one million dollars. Defendant's Memo. at 36. Each day of delay would also cost the Air Force between $50,000 to $100,-000, because the Titan IVB launch vehicle

that will carry the spacecraft is already fueled and sitting on the launch pad. Declaration of Brigadier General F. Randall Starbuck at ¶ 7–8. Ultimately, the public will be financially penalized by any delay because the added costs will eventually trickle down to the public.

Defendants also present evidence that any delay in the launching of the Cassini Mission will have a 'ripple effect' on other scheduled missions. This is in part because the launch pad that the Cassini spacecraft is on will need to be utilized, and also because a separate mission cannot be launched within close proximity of an already fueled and loaded spacecraft. *Id.; see also* Defendants' Memorandum at 37.

Additionally, the court recognizes that although there may be some dispute as to the date of the final agency action, there is no dispute that Plaintiffs were aware for some time of the launch window and parameters. Nor is there any dispute that all NASA studies were final as of August, 1997. Plaintiffs had the opportunity to bring this suit to the court without the need for immediate injunctive relief, and failed to do so.[4]

The court also acknowledges that NASA studies show there is a low probability of injury to Plaintiffs. Defendants estimation of cancer fatalities occurring due to a launch pad accident is one in one hundred thousand, and the estimation of cancer fatalities due to an accidental re-entry by the spacecraft is one in one million. This, weighed against the potential danger of delay in launching as well as the specific monetary harm alleged by Defendants, fails to meet Plaintiffs' burden of showing that the balance of harm tips in their favor.

The court is aware of and has carefully considered the potential risks presented to the court by Plaintiffs, and has not taken Plaintiffs concerns lightly. Still, the substantial economic as well as scientific harm faced by Defendants in concert with the danger of a delay in launch of the fully loaded and

fueled rocket which will occur if the injunctive relief is granted, balanced against the *potential* harm faced by Plaintiffs, leads the court to find that Plaintiffs have not met their burden.

### E. *Public Interest.*

The court finds that a preliminary injunction would not serve the public interest because of the significant scientific contributions the Cassini Mission will advance, and because the public would eventually bear the brunt of the financial burdens and potential danger caused by the delay.

### CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' Motion for Temporary Restraining Order and Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.

### ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE STAY PENDING APPEAL

The court heard Plaintiffs' Motion Reconsideration, or in the Alternative Stay Pending Appeal on October 14, 1997. Lanny Sinkin, Esq., appeared at the hearing on behalf of Plaintiffs; Assistant United States Attorney Michael Chun, and Civilian Attorney for the United States Air Force, Titan Project, Pamela M. Schnabel, appeared at the hearing on behalf of Defendants. After reviewing the motions and the supporting and opposing memoranda, the court DENIES Plaintiffs' Motion for Reconsideration, or in the Alternative Stay Pending Appeal.

### BACKGROUND

On October 11, 1997, this court denied Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction to prohibit the launch of the Cassini Mission. On October 7, 1997, Plaintiffs filed two com-

---

4. The court notes that Plaintiff Florida Coalition for Peace and Justice filed two similar actions in the U.S. District Court for the District of Columbia to stop both the Galileo launch in 1989, and Ulysses launch in 1990. In those actions FCPJ also requested emergency injunctive relief to postpone the launch of both spacecrafts. The request was denied in both instances, and the launches occurred as scheduled.

plaints, which were later consolidated by the court, alleging violations of Plaintiffs' procedural due process rights, and violations of the National Environmental Policy Act ("NEPA"). In its Order dated October 11, 1997, the court held that Plaintiffs did not meet their burden of proving likelihood of success on the merits and irreparable harm. The court found that at that time Plaintiffs did not provide sufficient evidence to demonstrate a violation of NEPA. Because the irreparable harm alleged by Plaintiffs was speculative, the balance of the hardships tipped in Defendants favor, as Defendants articulated substantial and concrete economic and scientific losses as well as potential danger from delay that would occur if the emergency relief was granted.

The Cassini Mission was scheduled to launch on October 13, 1997, at 10:55 p.m. Hawaii time. The launch was delayed for forty-eight hours because of wind patterns and a minor computer software problem. Plaintiffs then filed this Motion for Reconsideration or in the Alternative Stay Pending Appeal on October 14, 1997.[1] Defendants filed their opposition that same day.

### STANDARD OF REVIEW

 The disposition of a motion for reconsideration is within the discretion of the district court and will not be reversed absent an abuse of discretion. *Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir. 1982). There is a "compelling interest in the finality of judgments which should not be lightly disregarded." *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983).

 It is well settled in the Ninth Circuit that a successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Great Hawaiian Financial Corp. v. Aiu*, 116

F.R.D. 612, 616 (D.Hawai'i 1987), rev'd on other grounds, 863 F.2d 617 (1988). Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact, to prevent manifest injustice. Id. The District of Hawaii has implemented these standards in Local Rule 220–11.

### DISCUSSION

 Plaintiffs insist that the court erred in its previous decision. Plaintiffs assert that even though NASA had done a specific assessment for the Cassini Mission, that its decision to launch the mission was arbitrary and capricious. Plaintiffs maintain that NASA's underlying assumptions about risks of plutonium in the atmosphere are fundamentally in error, and therefore any decision made based upon the assumptions is arbitrary and capricious. They dispute the court's finding that Defendants considered alternatives to plutonium, as well as NASA's underlying assumption that the Cassini Mission could not be done with solar power. To further support their motion, Plaintiffs provide the court with information, new to Plaintiffs and the court, regarding a Department of Justice investigation of a major parts supplier, Solid State Devices, Inc. ("SSDI"), and its provision of substandard parts to NASA used in the Titan rocket and the Cassini probe. A federal grand jury returned a 23–count indictment while this court was considering the preliminary injunction. On the basis of the new information as well the arguments previously submitted to the court, Plaintiffs advance that they have demonstrated a likelihood of success on the merits as well as irreparable injury if the emergency relief is not granted.

Defendants argue that Plaintiffs are still questioning the decisions made by NASA instead of finding fault with NASA's compliance with NEPA. Defendants maintain that

---

1. Plaintiffs note in their motion that they attempted to contact someone at the District Court on October 13, 1997, the Columbus Day holiday, to alert the court to the filing of the reconsideration motion, and were unsuccessful. The court points out that the court as well as its staff were present and working in chambers the entire day, despite the federal holiday.

NEPA was complied with at every stage given that both an Environmental Impact Statement ("EIS") and a Supplemental Environmental Impact Statement ("SEIS") were generated for the Cassini Mission. Defendants dispute Plaintiffs' allegation that the new information brought to the court affects the court's previous decision. Defendants provide declarations that indicate they have been aware of the potential problems with SSDI parts for at least two years. Defendants were unable to provide this information to the court or Plaintiffs because of the ongoing criminal investigation. Defendants argue that because the indictment does not shed any new light on whether there was a NEPA violation, Plaintiffs have failed to meet the required burden.

Plaintiffs have not shown the court that its prior decision was incorrect. The court has carefully considered Plaintiffs' arguments regarding the hazards associated with plutonium and the assessment of alternative power sources done by NASA. While the court finds some additional support in Plaintiffs' motion and supporting declaration, Plaintiffs still fail to meet the high burden required for the issuance of a preliminary injunction. The information regarding the indictment of individuals affiliated with SSDI for providing substandard parts, is important. However, it is significant to the court that Defendants demonstrated that a thorough vetting of the parts provided by SSDI has been in process for two years. Those parts found not to meet the high standards for the project were replaced, and others were found to meet the standards after being tested. If Defendants had been unable to show the court that the safety of the Cassini Mission was not jeopardized by the inclusion of the parts provided by SSDI, this would be a different case. Here, Defendants have shown that the threat of inclusion of the substandard parts on the Cassini Mission was taken seriously, investigated, and eliminated prior to launch.

Plaintiffs also argue that the new information regarding the substandard parts requires a new EIS. Plaintiffs contend that these substandard parts indicate a breakdown in the quality assurance process at NASA, and that an EIS would highlight the problems and necessary corrections. Defendants disagree and focus on the fact that the substandard parts were replaced and that therefore the quality assurance process cannot be called into question. Furthermore, Defendants dispute that another EIS would be required under NEPA.

There is no legal basis to make NASA's general quality assurance program a central issue in this case. The issue is whether Defendants complied with the requirements of NEPA. The court finds that the EIS and the SEIS were prepared by NASA with the understanding that all of the parts used in the Cassini Mission met the required specifications. Because the substandard parts provided by SSDI have been replaced on the Titan and the Cassini probe, the condition of the rocket today is precisely as it was represented to the public in the EIS and SEIS. Thus, essentially, there is no change from what had originally been proposed and evaluated by Defendants, therefore no increased risk has been demonstrated by Plaintiffs.

This court will not intrude itself into the general workings of NASA, it must only consider whether NASA has taken a 'hard look' at the environmental concerns and therefore complied with NEPA. The court has done this and is satisfied that the court's previous decision was correct. Accordingly, Plaintiffs' Motion for Reconsideration or in the Alternative Stay Pending Appeal is DENIED.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' Motion for Reconsideration.

IT IS SO ORDERED.